**BOHM, MATSEN, KEGEL & AGUILERA, LLP**
Lee A. Wood – Of Counsel (SBN 58676)
Jonyson A. Pierce, Esq. (SBN 199354)
695 Town Center Drive, Suite 700
Costa Mesa, CA 92626
Telephone: (714) 384-6500
Facsimile: (714) 384-6501

Attorneys for defendants
CITY OF MAYWOOD, MAYWOOD POLICE DEPARTMENT, ANDREW
SERRATA and FRANK GARCIA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARITZA SANCHEZ MARTINEZ, an individual, by and through her mother and guardian ad litem, BERTHA MARTINEZ, BERTHA MARTINEZ, an individual, and WENDY SANCHEZ, an individual<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF MAYWOOD, MAYWOOD POLICE DEPARTMENT, COUNTY OF LOS ANGELES, ANDREW SERRATA, MAYWOOD OFFICER GARCIA, DAVID ISHIBASHI and DOES 1 through 10, Inclusive,<br><br>Defendants. | Case No. CV09-06734 SJO (RCx)<br>Assigned For All Purposes To:<br>Hon. S. James Otero<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; & JOINDER IN CO-DEFENDANTS MOTION FOR SUMMARY JUDGMENT/PARTIAL SUMMARY JUDGMENT**<br><br>*[Separate Statement of Uncontroverted Material Facts Filed Concurrently Herewith]*<br><br>**Date:** **August 30, 2010**<br>**Time:** **10:00 am**<br>**Ctrm:** **1, 2nd Floor (Spring Street)**<br><br>Trial:   October 19, 2010 |

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on August 30, 2010, at 10:00 a.m., in Courtroom 1 of the above-entitled court, located at 312 N. Spring Street in Los Angeles, California, defendants CITY OF MAYWOOD, a municipal corporation and public entity, the MAYWOOD-CUDAHY POLICE DEPARTMENT, ANDREW SERRATA, and FRANK GARCIA (Defendants) will and hereby do move this Court for summary judgment as to Plaintiffs' entire Complaint as there are no genuine issues of material fact with regard to the claims that Plaintiffs are making therein.

In the alternative, said Defendants will and hereby do move for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure against Plaintiff on the ground that there are no genuine issues of material fact with regard to the issues set forth in the attached Memorandum of Points and Authorities and Separate Statement of Uncontroverted Material Facts and Supporting Evidence.

The Motion will be based upon this notice, the attached Memorandum of Points and Authorities, the Separate Statement of Uncontroverted Material Facts and Supporting Evidence, the complete court file in this action, the declarations of Pat McPherson (attached to co-defendant County of Los Angeles' and David Ishibashi's motion for summary judgment and incorporated herein) and Jonyson A. Pierce, and all exhibits attached thereto, (including those attached to co-defendant County of Los Angeles' and David Ishibashi's motion for summary judgment and incorporated herein) and upon such other oral and documentary evidence as the Court may consider on this Motion. This Motion is made following the conference of all counsel and pursuant to Local Rule of Court 7-3, which took place on July 27, 2010.

DATED: August 2, 2010          BOHM, MATSEN, KEGEL & AGUILERA, LLP

By:    /s/ Jonyson A. Pierce
       Jonyson A. Pierce
       Attorneys for Defendants CITY OF MAYWOOD,
       MAYWOOD-CUDAHY POLICE DEPARTMENT,
       ANDREW SERRATA and FRANK GARCIA

2

# Table of Contents

I. INTRODUCTION ........................................................................................ 1

II. STATEMENT OF UNCONTROVERTED MATERIAL FACTS ...................... 3

III. THE MOVING PARTY IS ENTITLED TO SUMMARY JUDGMENT AS A
MATTER OF LAW WHERE THE EVIDENCE SHOWS THE PARTY HAS A
COMPLETE DEFENSE OR THAT PLAINTIFF LACKS ESSENTIAL
EVIDENCE TO MEET HIS BURDEN OF PROOF .......................................... 6

IV. SUMMARY JUDGMENT SHOULD BE GRANTED AS TO THE MAYWOOD
DEFENDANTS BECAUSE THE U.S. MARSHAL'S FUGITIVE TASK FORCE
IS THE APPROPRIATE DEFENDANT .......................................................... 7

V. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE
GRANTED BECAUSE A "SEARCH WARRANT" EXECUTED AT
PLAINTIFFS' RESIDENCE IS NOT A SERVICE, PROGRAM, OR
ACTIVITY CONTEMPLATED BY THE A.D.A. .............................................. 8

VI. DEFENDANTS PROVIDED A REASONABLE ACCOMMODATION BY
ALLOWING MARITZA TO STAY WITH EITHER BERTHA OR A
TRUSTED ADULT ON AUGUST 26, 2008 .................................................. 9

VII. THE EVIDENCE DEMONSTRATES THAT MCPD OFFICER GARCIA DID
NOT DISCRIMINATE AGAINST OR SEPARATE MARITZA FROM
BERTHA OR WENDY ................................................................................ 10

VIII. BECAUSE THE ANALYSIS UNDER THE REHABILITATION ACT IS
SIMILAR TO THAT UNDER THE A.D.A., PLAINTIFFS' SECOND CAUSE
OF ACTION FAILS AS WELL .................................................................... 11

IX. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AS TO THE
42 U.S.C. § 1983 CLAIM AND ALL CAUSES OF ACTION ...................... 12

X. BECAUSE PLAINTIFFS' CLAIMS FAIL UNDER THE A.D.A. AND THE
REHABILITATION ACT, PLAINTIFFS' FOURTH, FIFTH, AND SIXTH
CAUSES OF ACTION ALSO FAIL ............................................................. 15

i

XI.    PLAINTIFFS IIED CLAIM FAILS BECAUSE DEFENDANTS' CONDUCT
       WAS NOT "OUTRAGEOUS"...................................................................16

XII.   PLAINTIFFS CANNOT ESTABLISH A CLAIM FOR NEGLIGENT
       INFLICTION OF EMOTIONAL DISTRESS ...........................................18

XIII.  DEFENDANTS ARE NOT LIABLE FOR NEGLIGENCE BECAUSE THE
       MCPD OFFICERS MET THEIR DUTY OF CARE AND HAVE QUALIFIED
       IMMUNITY ...........................................................................................19

XIV.   MCPD OFFICERS SERRATA AND GARCIA ARE ENTITLED TO
       DISCRETIONARY IMMUNITY AS TO EACH CAUSE OF ACTION ...........19

XV.    THE CITY AND MCPD HAVE IMMUNITY FOR SERRATA'S AND
       GARCIA'S ACTS ..................................................................................22

XVI.   PLAINTIFFS LACK EVIDENCE TO ESTABLISH AN ESSENTIAL ELEMENT
       OF THEIR CLAIM AGAINST THE CITY OF MAYWOOD AND THE MCPD
       UNDER *MONELL* ..................................................................................23

XVII.  THE PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF; ALSO,
       THE PLAINTIFF'S INJUNCTIVE RELIEF IS MOOT BECAUSE THE MCPD
       WAS DISBANDED ON JULY 1, 2010.................................................25

## **Table of Authorities**

### **Cases**

*Adams v. City of Fremont, supra,* 68 Cal.App.4[th] at 280 ....................................... 18

*Alexander v. Choate,* 469 U.S. 287, 301-02, 83 L. Ed. 2d 661, 105 S. Ct. 712 (1985)........... 8

*American Nurses' Ass'n v. Illinois,* 783 F.2d 716........................................................ 6

*Armstrong,* 124 F.3d at 1023-24 .............................................................................. 9

*Board of Comm'rs of Bryan County v. Brown* 520 U.S. 397 ....................................... 23

*Brown v. Ransweiler, supra,* 171 Cal.App.4[th] at 534 .............................................. 19

*Caldwell v. Montoya* (1995) 10 Cal.4[th] 972, 976 .................................................... 20

*Celotex Corp. v. Catrett,* 477 US 317...................................................................... 7

*City of Canton v. Harris* (1989) 489 U.S. 378 ......................................................... 23

*City of St. Louis v. Praprotnik* (1988) 485 U.S. 112 ...........................................23, 24

*Crawford,* 115 F.3d at 483 .................................................................................... 9

*Davidson v.  Westminster* (1982) 32 Cal.3d 197, 209............................................... 16

*Devereaux v. Abbey,* 263 F.3d 1070 ........................................................................ 7

*Elton v. Orange County* (1970) 3 Cal.App.3d 1053 ................................................. 22

*Fairley v. Luman*  281 F.3d 913, 918 (9th Cir. 2002). .............................................. 24

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ............. 12

*Harris v. Mills,* 572 F.3d 66, 73 (2d Cir. 2009) ...................................................... 11

*Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d Cir. 2003) ................................... 11

*Johnson v. State of California* (1968) 69 Cal.2d 782, 782...................................... 20

*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917........................................ 19

*Lee v. City of Los Angeles,* 250 F.3d 668 (9th Cir. Cal. 2001) ...............................8, 9

*M.B. v. City of San Diego* (1991) 233 Cal.App.3d 699, 704-705 ............................... 18

*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 588........... 18

*McCorkle v. City of Los Angeles* (1969) 70 Cal.2d 252, 260...................................... 20

*McCorkle v. City of Los Angeles, supra* 70 Cal.2d 260 ........................................... 21

*McDade v. West,* 223 F.3d 1135, 1142 (9th Cir. 2000) ............................................ 23

1  *Monell v. Dep't of Soc. Serv.*, (1978) 436 U.S. 658, 690, 56 L. Ed. 2d 611, 98 S. Ct. 2018
2     (1978)..................................................................................................................23, 25
3  *Munoz v. City of Union City, supra,* 120 Cal.App.4th at 1093-1094......................................19
4  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099..................................7
5  *Pennsylvania Dep't of Corr. v. Yeskey*, 118 F.3d 168, 171 & n.5 (3d Cir. 1997)...................8
6  *Plumeau v. Sch. Dist. # 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)...............23
7  *Ronald S. v. County of San Diego, supra* 16 Cal.App.4th 897 ..............................................21
8  *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001).........12, 14, 15
9  *Sava v. Fuller* (1967) 249 Cal.App.2d 281 ........................................................................22
10 *Southern Calif. Gas Co. v. City of Santa Ana*, 336 F.3d 885...............................................7
11 *Sullivan v. City of Sacramento* (1987) 190 Cal.App.3d 1070.........................................20, 21
12 *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989)..............................23
13 *Tollerfson v. Roman Catholic Bishops* (1990)  219 Cal.App.3d 843...................................16
14 *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ...........................................................23
15 *Williams v. State of California* (1983) 34 Cal.3d 18, 23-24 ...............................................18
16 *Wooden v. Raveling* (1998) 61 Cal.App.4th 1035, 1038......................................................18

17                                              **Statutes**

18 29 USC §794 ...........................................................................................................1, 2, 11
19 42 USC §12131 ................................................................................................................1
20 42 U.S.C. § 12132 ......................................................................................................8, 11
21 42 U.S.C. § 1983 ...................................................................................................1, 2, 12,
22 Cal. Civ. Code §51 ......................................................................................................1, 2
23 Cal. Civ. Code § 51(b).....................................................................................................15
24 Cal. Civ. Code § 54 ..................................................................................................1, 2, 15
25 Gov't Code §11135............................................................................................................1, 2
26 Cal. Gov. Code § 11135(a),...............................................................................................15
27 Fed. R. Civ. Proc. 56(c) .....................................................................................................6
28 Gov. Code § 815.2(b) ......................................................................................................22

Gov. Code § 820.2................................................................................20, 21, 22

**Other Authorities**

American's with Disabilities Act........................................................................2

Americans with Disabilities Act. Title II of the ADA ....................................8, 11

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3              This litigation arises out of the execution of two search warrants that occurred

4    on August 22 and August 26, 2008, at the plaintiffs' home located at 5113 E. 60th St.,

5    in Maywood, California.  The plaintiffs in this action are Bertha Martinez, Maritza

6    Martinez, and Wendy Sanchez. The plaintiffs' complaint does not allege any

7    wrongdoing on August 22, 2008. However, Plaintiffs allege that with knowledge of

8    Maritza's disability, Defendants returned to plaintiffs' home on August 26, 2008, to

9    execute a second search warrant and during the search, separated Bertha and Maritza

10   during Bertha's interview, as well as other wrongful conduct.

11             Plaintiffs' complaint alleges nine causes of action: 1) Americans with

12   Disabilities Act (42 USC §12131) as to the City of Maywood (City), the Maywood-

13   Cudahy Police Department (MCPD), erroneously named Maywood Police

14   Department, and the County of Los Angeles (County); 2) § 504 of the Rehabilitation

15   Act of 1973 (29 USC §794) as to the City, MCPD, and County; 3) Fourteenth

16   Amendment (42 USC §1983) as to all Defendants; 4) California Gov't Code §11135

17   as to the City, MCPD, and County; 5) Unruh Civil Rights Act (Cal. Civ. Code §51) as

18   to the City, MCPD, and County; 6) California Disabled Persons Act (Cal. Civ. Code

19   §54) as to the City, MCPD, and County; 7) Intentional Infliction of Emotional

20   Distress as to all Defendants; 8) Negligent Infliction of Emotional Distress as to all

21   Defendants; and 9) Negligence as to all Defendants.

22             As a preliminary matter, Defendants City of Maywood, MCPD, and MCPD

23   Officers Serrata and Garcia join co-defendants motion for summary judgment/partial

24   summary judgment. Defendants motion for summary judgment, or in the alternative,

25   motion for partial summary judgment, should be granted given that plaintiffs have not

26   named the proper defendant in this action. The search warrants executed at the

27   plaintiffs' residence on August 22 and 26, 2008, were obtained, controlled,

28   spearheaded and executed by the U.S. Marshal Fugitive Task Force. Moreover,

1    plaintiffs' undisputed testimony indicates that most, if not all of the wrongful conduct,

2    was done by members of the U.S. Marshal Fugitive Task Force. However, plaintiffs

3    failed to name this entity as a defendant.

4        Moreover, Defendants' motion should be granted because the search warrant

5    executed at the plaintiff's residence on August 26, 2008, was not a "service, program,

6    or activity" as defined under the American's with Disabilities Act. Additionally,

7    plaintiffs were provided with a reasonable accommodation under the A.D.A. given

8    that Maritza was allowed to stay with "her mother or another trusted adult during

9    Plaintiff Bertha's interrogation" on August 26, 2008. (*See* Plaintiffs' Complaint, ¶s 64

10   & 74.) Also, the plaintiffs' testimony clearly shows that MCPD Officer Frank Garcia

11   did not separate Maritza from any of her family members, and neither MCPD Officer

12   Andrew Serrata nor Frank Garcia discriminated against Maritza based on disability.

13       For the same reasons this motion should be granted as to plaintiffs' claim under

14   the A.D.A., so too should it be granted as to plaintiffs' discrimination claims under §

15   504 of the Rehabilitation Act of 1973 (29 USC §794); California Gov't Code §11135;

16   the Unruh Civil Rights Act (Cal. Civ. Code §51); and the California Disabled Persons

17   Act (Cal. Civ. Code §54), given that there is no evidence that Defendants

18   discriminated against the plaintiffs or denied them reasonable accommodations.

19       The motion should also be granted as to plaintiffs' claim under the Fourteenth

20   Amendment (42 USC §1983), given that Defendants did nothing to violate the

21   plaintiff's Constitutional rights, and there is no evidence that plaintiff's Constitutional

22   rights were violated.  Moreover, Defendants have qualified immunity, and plaintiffs

23   have no evidence to overcome this immunity. Summary judgment should also be

24   granted as to plaintiffs' *Monell* claim as to the City and MCPD because there is no

25   evidence that any of the alleged Constitutional violations were committed pursuant to

26   a formal policy, practice or custom. Also, because MCPD Officers Serrata and Garcia

27   have discretionary immunity, so do the City of Maywood and the MCPD.

28       As to plaintiffs' claims of IIED, NIED, and Negligence, the motion should be

1  granted because plaintiffs' fail to satisfy the elements of these causes of action.

2  Consequently, the court should grant Defendants' motion for summary

3  judgment, or in the alternative, partial motion for summary judgment.

4  **II.   <u>STATEMENT OF UNCONTROVERTED MATERIAL FACTS</u>**

5  This litigation arises out of two search warrants that were initiated, obtained,

6  coordinated and spearheaded by the U.S. Marshal's Fugitive Task Force (U.S.

7  MFTF), and executed at the plaintiffs' residence, located at 5113 E. 60th St., in

8  Maywood, Ca., on August 22 and 26, 2008. (UMF 1.) During both search warrants,

9  MCPD Officer Andrew Serrata (Serrata) was called to assist with the search as a

10  gang expert. (UMF 2.) MCPD Officer Frank Garcia (Garcia) was not present on

11  August 22, and was not present during the entirety of the execution of the second

12  search warrant on August 26, 2008. (UMF 3.)

13  At the time of the first and second search warrants, Bertha Martinez (Maritza's

14  and Wendy's Mother), Wendy Sanchez, Maritza Martinez (Autistic), and Joaquin

15  Olvera (Maritza's and Wendy's Cousin, DOB:2/8/81) were living at the subject

16  residence. (UMF 4.) Guandencio Lopez (Bertha's Husband; Maritza's and Wendy's

17  Father; Joaquin's Uncle) was also present on August 22, 2008, but he was arrested

18  and taken into custody on that date. (UMF 5.)

19  According to the plaintiffs' complaint and deposition testimony, Defendants

20  could have provided a reasonable accommodation under the A.D.A. on August 26,

21  2008, by allowing "Maritza to remain with her mother or another trusted adult during

22  Plaintiff Bertha's interrogation." (UMF 6.) During the search warrant on August 22,

23  2008, while Bertha was interrogated in a bedroom, Maritza stayed with her sister,

24  Wendy, in the living room. (UMF 7.) The plaintiffs' complaint does not allege any

25  wrongdoing as a result of the search warrant on August 22. (UMF 8.)

26  On August 26, 2008, the U.S. Marshal's Fugitive Task Force initiated,

27  obtained, coordinated and spearheaded a second search warrant, which was executed

28  at the plaintiffs' residence on August 26, 2008, to obtain an assault rifle. (UMF 9.)

3

Serrata was called to help identify gang paraphernalia and gang writings. (UMF 10.) At some point during the execution of the second search warrant, Bertha, Maritza, and Joaquin were taken to the front yard area, where they remained for about a half hour. (UMF 11.) According to Bertha's testimony, she asked that she not be separated from Maritza, but she was then taken to the back yard area, leaving Maritza and Joaquin in the front yard area. (UMF 12.)

Wendy was not present on August 26, 2008, when the officers arrived to execute the second search warrant at the subject residence because she was at work. (UMF 13.) While at the scene, Wendy saw an "officer in black" searching Bertha's car. (UMF 14.) She had seen these same black uniforms during the first search warrant on August 22, 2008, but she did not know to which law enforcement agency they belonged. (UMF 15.) She also saw Garcia standing in the front yard area by a tree. (UMF 16.) Importantly, Garcia was not wearing a black uniform. (UMF 17.)

Wendy went straight to her sister, Maritza, who was sitting on the front porch. (UMF 18.) Wendy noticed that Maritza had urinated on herself only after Maritza stood up to pick up a toy. (UMF 19.) Wendy asked the "officer in black" if she could change Maritza, and the "officer in black" said "No." (UMF 20.) When Wendy tried to go to the back yard area to see Bertha, the "officer in black" told her she couldn't go back there. (UMF 21.) Wendy then left the subject residence to go to Pro Uno in order to get help. (UMF 22.) When she returned, she saw Garcia still standing by the tree in the front yard area. (UMF 23.) Wendy again walked straight to her sister. (UMF 24.) Again, Wendy asked to see Bertha, but the "officer in black" said "No." (UMF 25.) Wendy was eventually allowed to go to the back yard area to see her mother. (UMF 26.) She asked a reporter who was standing outside the front gate and who she met for the first time to keep an eye on her sister. (UMF 27.)

Wendy testified that while in the back yard area, she noticed that Bertha was having difficulty breathing. (UMF 28.) According to Wendy's verified written discovery responses, during the search warrant of August 26, 2008, Serrata said to

4

1   her, "Stay away from your mother, she's just acting." (UMF 29.) Wendy testified

2   that paramedics arrived 10-15 minutes after talking with Serrata. (UMF 30.)  Bertha

3   refused transport to the hospital. (UMF 31.)

4       According to Bertha's verified written discovery responses, during the search

5   warrant of August 26, 2008, Serrata said to her, "You are a bad woman." "We are

6   going to take your daughter away." "Immigration is going to get you." and "You're

7   probably a chola (gangster)." (UMF 32.) Also, Garcia said to her, "You're never

8   going to see her [Maritza] again. The van will come and get her." According to

9   Bertha's testimony, Garcia did not do anything other than make these types of

10  statements to her. (UMF 33.)

11      According to Wendy's verified written discovery responses, during the search

12  warrant of August 26, 2008, Garcia said to her, "Where does your sister sleep?" "We

13  need to pack her things." "Pack your sister's clothes; we're taking her away," and

14  "You guys shouldn't live here." (UMF 34.)

15      Patricia Bravo, City Clerk for the City of Maywood, testified as the PMK for

16  Defendant City of Maywood. (UMF 35.) As the City Clerk, she is responsible for

17  providing accommodations to disabled people who request them in order to attend

18  City Council meetings. (UMF 36.) Ms. Bravo testified that depending on the

19  accommodation requested, it would be directed to a particular department within the

20  City. (UMF 37.) Ms. Bravo also testified about how the City provides

21  accommodations to disabled people, i.e., the City provides accommodations to

22  disabled people who need special accommodations to attend a City Council meeting

23  or to take a test for employment with the City. (UMF 38.) Ms. Bravo also testified

24  that the City's job postings encourage disabled people to apply for employment.

25  (UMF 39.) Other than the instant lawsuit, Ms. Bravo was not familiar with any other

26  lawsuits or complaints against the City of Maywood regarding the failure to provide

27  accommodations to disabled persons. (UMF 40.)

28

Jimmy Rubio, Professional Standards Manager, testified as the PMK for the MCPD. (UMF 41.) As the Professional Standards Manager for the MCPD, he has complete oversight of background investigations, internal affairs investigations, work-comp related issues, training, custodian of records, policies and procedures, and risk management issues. (UMF 42.) Mr. Rubio, and MCPD Officers Serrata and Garcia testified about certain polices and procedures regarding accommodations to disabled persons, i.e., Policy 418 (Mental Illness Commitments), Policy 370 (Hearing Impaired/Disabled Communications), Policy 404 (Briefing Training), Policy 354 (Handcuff Policy), and Policy 322 (Search & Seizure). (UMF 43.) Mr. Rubio, and MCPD Officers Serrata and Garcia also testified about the training MCPD officers have received regarding the A.D.A. and disabled people. (UMF 44.) Other than the instant lawsuit, Mr. Rubio is not aware of any other complaints the MCPD has received in the last two years regarding individuals with disabilities. (UMF 45.) Moreover, the plaintiffs have no evidence that MCPD Officers Serrata and Garcia had a history of violating citizens' civil rights or professional misconduct. (UMF 46.)

## III. THE MOVING PARTY IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW WHERE THE EVIDENCE SHOWS THE PARTY HAS A COMPLETE DEFENSE OR THAT PLAINTIFF LACKS ESSENTIAL EVIDENCE TO MEET HIS BURDEN OF PROOF

A party moving for summary judgment has the burden to persuade the court that it is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). The court may grant summary judgment as to any claim or defense. Fed. R. Civ. Proc. 56(a), (b). Where the order does not terminate the action but rather merely constitute an interlocutory order concerning certain claims or defenses, it is commonly referred to as "partial summary judgment." *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 729 (7th Cir. 1986). A defendant can move for summary judgment either by proving it has a complete defense or by showing that the plaintiff cannot meet its burden of proof. A

6

1  defendant moving for summary judgment thus may meet its burden by presenting
2  evidence establishing all the elements of an affirmative defense entitling the party to
3  judgment in its favor. *Southern Calif. Gas Co. v. City of Santa Ana*, 336 F.3d 885,
4  888 (9th Cir. 2003).

5      A defendant may also move for summary judgment on the ground that the
6  plaintiff cannot establish his claim. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.,*
7  *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In that event, the defendant can meet its
8  burden of production either by disproving an essential element of the plaintiff's claim.
9  Ibid. In the alternative, a defendant can meet its burden of production by showing that
10  the plaintiff lacks sufficient evidence regarding an essential element of its claim to
11  carry its burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 US 317, 323, 106
12  S.Ct. 2548, 2553 (1986). In 2001, the Ninth Circuit held that a defendant moving for
13  summary judgment based on an argument that the plaintiff lacks evidence can meet
14  its burden to show the lack of evidence based on argument alone. *Devereaux v. Abbey*,
15  263 F.3d 1070, 1076 (9th Cir. 2001). "(T)he Celotex 'showing' can be made by
16  pointing out through argument – the absence of evidence to support plaintiff's claim."

17  **IV.   SUMMARY JUDGMENT SHOULD BE GRANTED AS TO THE**
18  **MAYWOOD DEFENDANTS BECAUSE THE U.S. MARSHAL'S**
19  **FUGITIVE TASK FORCE IS THE APPROPRIATE DEFENDANT**

20      It is undisputed that the U.S. MFTF obtained and coordinated the two search
21  warrants that were executed at the plaintiffs' residence on August 22 and 26, 2008.
22  (UMF 1.) However, rather than naming the proper defendant, plaintiffs named the
23  City, MCPD, and Officers Serrata and Garcia for the alleged wrongful conduct
24  committed by the U.S. MFTF. For example, Wendy testified that the "officer in
25  black" was the one who did not allow her to change Maritza's wet clothing and
26  denied her access to Bertha on August 26, 2008. (UMFs 14-25.) Importantly, Garcia
27  was not wearing a black uniform on August 26, 2008 (UMF 17), and each time
28  Wendy came to the house on August 26, 2008, she went strait to Maritza. (UMFs 18

7

POINTS AND AUTHORITIES IN SUPPORT THEREOF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

& 24.). Thus, Garcia did not prevent Wendy from being with Maritza or Bertha, and he was not present when Bertha was allegedly separated from Maritza. (UMF 3.) Hence, it is apparent from Wendy's testimony that it was the "officer in black," a member of the U.S. MFTF, who plaintiffs should have named as defendant.

**V.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE A "SEARCH WARRANT" EXECUTED AT PLAINTIFFS' RESIDENCE IS NOT A SERVICE, PROGRAM, OR ACTIVITY CONTEMPLATED BY THE A.D.A.**

In *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. Cal. 2001), plaintiffs' First Amended Complaint included a claim for violation of the Americans with Disabilities Act. Title II of the ADA provides that: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. *Lee*, 250 F.3d 668, 690. Thus, if a public entity denies an otherwise "qualified individual" "meaningful access" to its "services, programs, or activities" "solely by reason of" his or her disability, that individual may have an ADA claim against the public entity. *Lee*, 250 F.3d 668, 691. (citing *Alexander v. Choate*, 469 U.S. 287, 301-02, 83 L. Ed. 2d 661, 105 S. Ct. 712 (1985) (internal citation omitted)).

The ADA's broad language brings within its scope "anything a public entity does." *Pennsylvania Dep't of Corr. v. Yeskey*, 118 F.3d 168, 171 & n.5 (3d Cir. 1997), *aff'd* 524 U.S. 206, 141 L. Ed. 2d 215, 118 S. Ct. 1952 (1998) (quoting 28 C.F.R. Pt. 35, App. A, preamble to ADA regulations). This includes programs or services provided at jails, prisons, and any other "custodial or correctional institution." *Lee*, 250 F.3d at 691. "Although 'incarceration itself is hardly a "program" or "activity" to which a disabled person might wish access, "mental health services and other activities or services undertaken by law enforcement and provided by correctional facilities to those incarcerated are "services, programs, or

8

activities of a public entity" within the meaning of the ADA. *Armstrong*, 124 F.3d at 1023-24 (quoting *Crawford*, 115 F.3d at 483 (internal citation omitted) (alteration in original). *Lee*, 250 F.3d at 691.

In the instant litigation, the plaintiffs were not *excluded* from participating in *or* benefitting from a public program, activity, or service, such as an explorer program, transportation services, a mental health service, etc. As the Court noted, "incarceration itself is hardly a program or activity to which a disabled person might wish access." *Id.* at 691. Similarly, a search warrant, as was executed at the plaintiffs' residence on August 26, 2008, is "hardly a program or activity to which a disabled person might wish access." As such, summary judgment should be granted as to the plaintiffs' A.D.A. claim.

## VI.   DEFENDANTS PROVIDED A REASONABLE ACCOMMODATION BY ALLOWING MARITZA TO STAY WITH EITHER BERTHA OR A TRUSTED ADULT ON AUGUST 26, 2008

Plaintiffs contend at ¶64 of their complaint that Defendants failed to provide Maritza with a reasonable accommodation by not allowing her to remain with her mother or another trusted adult. Plaintiffs also contend at ¶74 of their complaint that Defendants could have provided a reasonable accommodation under the A.D.A. on August 26, 2008, by allowing "Maritza to remain with her mother or another trusted adult during Plaintiff Bertha's interrogation." (UMF 6.) It is undisputed that during the search warrant on August 22, 2008, Maritza stayed with Wendy in the living room while Bertha was interrogated in a separate room. (UMF 7.) Coincidentally, the plaintiffs' complaint does not allege any wrongdoing as a result of the search warrant on August 22, 2008. (UMF 8.) Also, on August 26, 2008, Wendy asked a news reporter to keep an eye on Maritza. (UMF 27.) Thus, the plaintiffs' complaint, as well as Bertha's and Wendy's testimony, shows that a reasonable accommodation would have been to allow Maritza to stay with either Bertha or another trusted adult.

9

1   It is further undisputed that at some point during the second search warrant on

2   August 26, 2008, Bertha, Maritza, and Joaquin were taken to the front yard area.

3   (UMF 11.) According to Bertha's testimony, she was then taken to the back yard

4   area, <u>leaving Maritza and Joaquin in the front yard area</u>. (UMF 12.) Thus,

5   Defendants allowed Maritza to stay with Bertha or another trusted adult, namely,

6   Joaquin, who was Maritza's cousin. Plaintiffs can hardly dispute that Joaquin was

7   not "another trusted adult" considering that Wendy asked a news reporter at the

8   house, whose name she couldn't even remember during her deposition, to keep an

9   eye on her sister while she went to the back yard area. (UMF 27.)

10   As can be seen from the testimony of Bertha and Wendy Sanchez, as well as

11   their complaint, Defendants provided plaintiffs' with a reasonable accommodation

12   by allowing Maritza to stay with Bertha or another trusted adult August 26, 2008.

13   **VII.   THE EVIDENCE DEMONSTRATES THAT MCPD OFFICER GARCIA**

14   **DID NOT DISCRIMINATE AGAINST OR SEPARATE MARITZA**

15   **FROM BERTHA OR WENDY**

16   MCPD Officer Garcia was not present during the entirety of the execution of

17   the second search warrant on August 26, 2008. In fact, Bertha testified that she was in

18   the back yard area for about an hour before she saw Garcia. (UMF 3.) Importantly,

19   Wendy testified that the "officer in black" denied her request to change Maritza's

20   soiled clothing on August 26, 2008. (UMF 20.) Also, when Wendy tried to go to the

21   back yard area to see Bertha, it was the "officer in black" who told her she couldn't.

22   (UMF 21.) After Wendy left the residence and returned with the Mayor and a court

23   reporter, it was the "officer in black" who again denied Wendy access to see her

24   mother in the back yard area. (UMF 25.) Importantly, Garcia was not wearing a black

25   uniform on August 26, 2008. (UMF 17.) Wendy testified that each time she came to

26   the house on August 26, 2008, she went straight to Maritza. (UMFs 18 & 24.). Thus,

27   Garcia did not prevent Wendy from being with Maritza or Bertha, and he was not

28

10

1  present when Bertha was allegedly separated from Maritza. (UMF 3.) Also, he did

2  not prevent Wendy from changing Maritza's soiled clothing. (UMF 20.)

3       Also, according to Wendy's verified written discovery responses, during the

4  search warrant of August 26, 2008, Garcia said to her, "Where does your sister

5  sleep?" "We need to pack her things." "Pack your sister's clothes; we're taking her

6  away," and "You guys shouldn't live here." (UMF 34.)  Also, according to Bertha's

7  verified written discovery responses, Garcia said to her, "You're never going to see

8  her [Maritza] again. The van will come and get her." Importantly, according to

9  Bertha's testimony, Garcia did not do anything other than make these types of

10 statements to her. (UMF 33.)

11      Therefore, the motion should be granted in favor of Garcia as to plaintiffs'

12 A.D.A. claim.

13 **VIII.  BECAUSE THE ANALYSIS UNDER THE REHABILITATION ACT IS**

14 **SIMILAR TO THAT UNDER THE A.D.A., PLAINTIFFS' SECOND**

15 **CAUSE OF ACTION FAILS AS WELL**

16      Courts generally apply the same legal standards when adjudicating claims

17 arising under ADA Title II and ones arising under the Rehabilitation Act. *Harris v.*

18 *Mills*, 572 F.3d 66, 73 (2d Cir. 2009). Although there are some differences between

19 the statutes, "unless one of those subtle distinctions is pertinent to a particular case,

20 [the Court] treat[s] claims under the two statutes identically." *Henrietta D. v.*

21 *Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) To state a claim under ADA Title II,

22 plaintiffs must allege that: "(1) they are 'qualified individuals' with a disability; (2)

23 that the defendants are subject to the ADA; and (3) that plaintiffs were denied the

24 opportunity to participate in or benefit from defendants' services, programs, or

25 activities, or were otherwise discriminated against by defendants, by reason of

26 plaintiffs' disabilities." 42 U.S.C.A § 12132; *see also Harris*, 572 F.3d at 73-74. In

27 addition, to state a claim under the Rehabilitation Act, plaintiffs must demonstrate

28 that the entity defendant receives federal funding. 29 U.S.C. §794.

11

As argued above with respect to plaintiffs' claims under the A.D.A., the proper defendant is the U.S. Marshals Fugitive Task Force. This entity initiated, obtained, coordinated and spearheaded the execution of the search warrant on August 26, 2008. (UMF 1.) Also, according to Wendy's testimony, alleged unlawful conduct was done by an "officer in black," not by MCPD officers. (UMFs 14-25.) Also, as argued above, the search warrant executed on August 26, 2008, was not a service, program or activity from which plaintiffs were denied access. In any event, plaintiffs were provided a reasonable accommodation by allowing Maritza to stay with either Bertha or another trusted adult on August 26, 2008. (UMFs 7, 12, 18, 24, & 27.) Also, as this claim pertains to Garcia, plaintiffs' testimony shows that he did not separate Maritza from Bertha or Wendy; he did not deny Wendy or Bertha access to Maritza; he did not prevent Wendy from changing Maritza's alleged soiled clothing; and he did not prevent Wendy from seeing Bertha. (UMFs 13-25 & 33.) For these reasons, summary judgment should be granted as to plaintiffs' second cause of action.

## IX.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AS TO THE 42 U.S.C. § 1983 CLAIM AND ALL CAUSES OF ACTION

Plaintiffs have alleged various conduct against the Defendants in their Third Cause of Action based on their alleged failure to provide reasonable accommodations to plaintiffs, threatening plaintiffs with child protective services, and not allowing Wendy to change Maritza's soiled clothing. This alleged conduct also serves as the basis for each of plaintiffs' causes of action, which are subject to the doctrine of qualified immunity. Qualified immunity serves to shield government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald* (1982) 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396. To this extent, it is not merely a defense from liability but an entitlement to not go to trial. *Saucier v. Katz* (2001) 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L.Ed.2d 272. Further, it should be decided early in the proceedings. *Id.*

1    In evaluating claims of qualified immunity, the first question to be asked is
2    whether, "[t]aken in the light most favorable to the party asserting the injury, do the
3    facts alleged show the officer's conduct violated a constitutional right?" *Saucier*,
4    583 U.S. at 201.  If no constitutional right is found to have been violated, then the
5    there is no further need to inquire into the immunity.  First and foremost, it is clear
6    from the evidence that Defendants did not violate plaintiffs' constitutional right to
7    due process because plaintiffs were provided a reasonable accommodation by
8    allowing Maritza to stay with either Bertha or another trusted adult on August 26,
9    2008. (UMFs 7, 12, 18, 24, & 27.)

10    Specifically as to Wendy's claims that her due process rights were violated,
11    her testimony demonstrates that most of the alleged unlawful conduct directed at her
12    was at the hands of an "officer in black," a member of the U.S. MFTF, but in any
13    event, not MCPD Officer Garcia or Serrata. (UMFs 14-25.) With respect to MCPD
14    Officer Serrata, Wendy testified that while in the back yard area, she noticed that
15    Bertha was having difficulty breathing. (UMF 28.) According to Wendy's verified
16    written discovery responses, during the search warrant of August 26, 2008, Serrata
17    said to her, "Stay away from your mother, she's just acting." (UMF 29.) Importantly,
18    Wendy testified that paramedics arrived 10-15 minutes after talking with Serrata
19    (UMF 30); thus, Bertha was not denied medical attention.

20    As to Bertha's claims that her constitutional rights were violated, the testimony
21    demonstrates that Officer Garcia did not separate Maritza from Bertha or Wendy; he
22    did not deny Wendy or Bertha access to Maritza; he did not prevent Wendy from
23    changing Maritza's alleged soiled clothing; and he did not prevent Wendy from
24    seeing Bertha. (UMFs 13-25 & 33.) At most, Garcia said to Bertha, "You're never
25    going to see her [Maritza] again. The van will come and get her." (UMF 33.) With
26    respect to Serrata, Bertha's verified written discovery responses allege that he said to
27    her during the search warrant of August 26, 2008, "You are a bad woman." "We are

28

going to take your daughter away." "Immigration is going to get you." and "You're probably a chola (gangster)." (UMF 32.)

As to Maritza's claims that her constitutional rights were violated, the arguments as to Bertha and Wendy also apply to her as well regarding the alleged separation of Bertha from Maritza. Regarding the claim that Maritza was left in soiled clothing, it is undisputed that Wendy didn't even notice Maritza was wet until Maritza stood up to pick up a toy that had fallen. (UMF 19.) There is no evidence that any of the MCPD officers knew Maritza was wet from urinating on herself. Finally, Wendy testified that it was the "officer in black" who denied her request to change Maritza. (UMF 20.) Based on this evidence, MCPD Officers Serrata and Garcia did not violate any of the plaintiffs' constitutional rights.

Assuming arguendo that the Court does find that the MCPD officers violated the plaintiffs'' constitutional rights, the next question becomes whether the constitutional right was clearly established at the time of the incident such that a reasonable officer would have known that his conduct was a violation of the individual's rights. *Saucier*, 533 U.S. at 201. If plaintiffs' actual argument is that a reasonable accommodation would have been for Maritza to stay with Bertha, only, and not a trusted adult, it was reasonable for Defendants to believe that a reasonable accommodation would have been to allow Maritza to stay with either Bertha or a trusted adult, given the fact that on August 22, 2006, Bertha did not complain when Maritza was left with Wendy while Bertha was interrogated in another room (UMFs 7 & 8), and Wendy herself asked a news reporter to keep an eye on Maritza on August 26, 2008, when she went to the back to see Bertha. (UMFs 26 & 27.)

Regarding the alleged threats that were made to the plaintiffs regarding protective services, assuming these statements to be true, it would not have been evident to the officers that they were violating a constitutional right, given that the MCPD officers were attempting to find an assault rifle in connection with the search warrant. Assuming the officers attempted to somehow coerce Bertha to provide the

14

1   location of the assault rifle, her right to be free from such alleged threats would not

2   have been "clearly established at the time of the incident such that a reasonable

3   officer would have known that his conduct was a violation of the individual's rights."

4   *Saucier*, 533 U.S. at 201.  Therefore, Defendants are entitled to qualified immunity.

5   **X.   BECAUSE PLAINTIFFS' CLAIMS FAIL UNDER THE A.D.A. AND**

6   **THE REHABILITATION ACT, PLAINTIFFS' FOURTH, FIFTH, AND**

7   **SIXTH CAUSES OF ACTION ALSO FAIL**

8       Plaintiffs' Fourth Cause of Action alleges a violation of Cal. Gov. Code §

9   11135(a), which states in part: "No person in the State of California shall, on the

10  basis of... disability, be unlawfully denied full and equal access to the benefits of, or

11  be unlawfully subjected to discrimination under any program or activity that is

12  conducted, operated, or administered by the state or by any state agency, and is

13  funded directly by the state or receives any financial assistance from the state."

14      Plaintiffs' Fifth Cause of Action alleges a violation of Cal. Civ. Code § 51(b),

15  which states in part: "All persons within the jurisdiction of this state are free and

16  equal, and no matter what their... disability... are entitled to the full and equal

17  accommodations, advantages, facilities, privileges, or services in all business

18  establishments of every kind whatsoever."

19      Plaintiffs' Sixth Cause of Action alleges a violation of Cal. Civ. Code § 54,

20  which states in part: "Individuals with disabilities or medical conditions have the

21  same rights as the general public to the full and free use of... public services..."

22      For the sake of repetition, Defendants incorporate their arguments above in

23  Sections V, VI, VII, & VIII with respect to plaintiffs' Fourth, Fifth, and Sixth Causes

24  of Action. Also, as to Plaintiffs' Fifth Cause of Action under Cal. Civ. Code § 51(b),

25  plaintiffs were not denied "full and equal accommodations, advantages, facilities,

26  privileges, or services" in a business establishment, given that the search warrant

27  executed on August 26, 2008, was at plaintiff's residence. (UMF 1.) Thus, summary

28  judgment should be granted as to these Causes of Action.

15

## XI. PLAINTIFFS IIED CLAIM FAILS BECAUSE DEFENDANTS' CONDUCT WAS NOT "OUTRAGEOUS"

In order to state a cause of action for intentional infliction of emotional distress, plaintiffs must establish: (1) outrageous conduct by the Defendants; (2) an intention to cause, or the reckless disregard of, or the probability of causing, emotional distress; (3) the suffering of severe emotional distress by the plaintiffs; and (4) actual and proximate causation of plaintiff's emotional distress by Defendant's outrageous conduct. *Davidson v. Westminster* (1982) 32 Cal.3d 197, 209. California courts have strictly adhered to the position that the plaintiff, in order to recover for intentional infliction of emotional distress, must show that the conduct that produced the purported emotional distress was outrageous. *Davidson*, 32 Cal.3d at 209.

"It is the duty of the court to determine in the first instance, whether the Defendant's conduct may reasonably be regarded as so extreme and outrageous that recovery is permissible." *Tollerfson v. Roman Catholic Bishops* (1990) 219 Cal.App.3d 843, 858 overruled on other grounds in *Scott*, 11 Cal.4th at 473. "Outrageous" conduct has been defined as conduct that is "so extreme as to exceed all bounds of that usually tolerated in a civilized community," that is "regarded as atrocious and utterly intolerable in a civilized community" or that "has gone beyond all reasonable bounds of decency." *Davidson*, 32 Cal.3d at 209.

First and foremost, it is clear from the evidence that Defendants provided a reasonable accommodation by allowing Maritza to stay with either Bertha or another trusted adult on August 26, 2008. (UMFs 7, 12, 18, 24, & 27.) Thus, any alleged separation of Maritza from any of her Bertha or Wendy cannot serve as the basis of any alleged "outrageous" conduct.

Specifically as to Wendy's claim of IIED, her testimony demonstrates that most of the alleged outrageous conduct directed at her was at the hands of an "officer in black," a member of the U.S. MFTF, but in any event, not MCPD Officer Garcia or Serrata. (UMFs 14-25.) According to Wendy's verified written discovery

16

1   responses, during the search warrant of August 26, 2008, Serrata said to her, "Stay

2   away from your mother, she's just acting" (UMF 29), in reference to Bertha's

3   alleged medical condition. Importantly, Wendy testified that paramedics arrived 10-

4   15 minutes after her conversation with Serrata, (UMF 30), so Bertha was not denied

5   medical attention. Hence, based on the evidence, Serrata did nothing towards Wendy

6   other than make these alleged statements.

7          As to Bertha's IIED claim, the testimony demonstrates that Officer Garcia did

8   not separate Maritza from Bertha or Wendy; he did not deny Wendy or Bertha access

9   to Maritza; he did not prevent Wendy from changing Maritza's alleged soiled

10  clothing; and he did not prevent Wendy from seeing Bertha. (UMFs 13-25 & 33.) At

11  most, Garcia said to Bertha, "You're never going to see her [Maritza] again. The van

12  will come and get her." (UMF 33.) With respect to Serrata, Bertha's discovery

13  responses allege that he said to her during the search warrant of August 26, 2008,

14  "You are a bad woman." "We are going to take your daughter away." "Immigration

15  is going to get you." and "You're probably a chola (gangster)." (UMF 32.)

16         As to Maritza's I.I.E.D. claim, the arguments as to Bertha and Wendy also

17  apply to her as well regarding the alleged separation of Bertha from Maritza.

18  Regarding the claim that Maritza was left in soiled clothing, it is undisputed that

19  Wendy didn't even notice Maritza was wet until Maritza stood up to pick up a toy

20  that had fallen. (UMF 19.) There is no evidence that any of the MCPD officers knew

21  Maritza was wet from urinating on herself. Finally, Wendy testified that it was the

22  "officer in black" who denied her request to change Maritza. (UMF 20.)

23         Thus, Defendants are not liable to plaintiffs for IIED, given that their conduct

24  was not "so extreme as to exceed all bounds of that usually tolerated in a civilized

25  community," that is "regarded as atrocious and utterly intolerable in a civilized

26  community" or that "has gone beyond all reasonable bounds of decency."

27  ///

28  ///

## XII.  **PLAINTIFFS CANNOT ESTABLISH A CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

"The negligent causing of emotional distress is not an independent tort but the tort of negligence." *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 588. "The traditional elements of duty, breach of duty, causation and damages apply. Whether a defendant owes a duty is a question of law." *Ibid.* Direct victim claims are based on the violation of a duty owed directly to the plaintiff. *Wooden v. Raveling* (1998) 61 Cal.App.4th 1035, 1038. California courts have allowed plaintiffs to assert negligent infliction of emotional distress claims as direct victims against peace officers only where the police conduct creates a special relationship between the police officer and the plaintiff. *Williams v. State of California* (1983) 34 Cal.3d 18, 23-24. This is a very narrow exception to the general rule that the police owe duties of care only to the public at large and not to individual members of the public. *Ibid.*; see also *M.B. v. City of San Diego* (1991) 233 Cal.App.3d 699, 704-705. "Precious few courts have actually imposed a duty of care on law enforcement officers under this doctrine." *Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 280, *rehearing denied,* 1999 Cal.App. LEXIS 1, *rev. denied,* 1999 Cal. LEXIS 1667.

California courts only impose a duty where officers made misrepresentations that induced a citizen's detrimental reliance on police action or lulled a citizen into a false sense of security and then withdrew essential safety precautions. *Adams v. City of Fremont, supra,* 68 Cal.App.4th at 280 [noting only five cases imposed liability]. To establish a special relationship, the California Supreme Court has held that "the plaintiff must still plead and prove that police conduct in a situation of dependency lulled the plaintiff into a false sense of security, thereby inducing the plaintiff's detrimental reliance on the police for protection." *Ibid. citing Williams v. State of California, supra,* 34 Cal.3d at 25.

18

Plaintiff has neither plead nor proved that the Defendants' conduct lulled plaintiff into a false sense of security, thereby inducing plaintiffs' detrimental reliance on the police for protection.   Plaintiffs have therefore not established a special relationship between them and Defendants, and thus, their claim for negligent infliction of emotional distress fails as a matter of law.

## XIII. DEFENDANTS ARE NOT LIABLE FOR NEGLIGENCE BECAUSE THE MCPD OFFICERS MET THEIR DUTY OF CARE AND HAVE QUALIFIED IMMUNITY

The court in *Brown v. Ransweiler* has held that summary adjudication of plaintiffs' negligence cause of action was appropriate. *Brown v. Ransweiler, supra,* 171 Cal.App.4th at 534.   The elements of a negligence cause of action are 1) legal duty to use due care, 2) breach, 3) breach was proximate or legal cause of resulting injury, and 4) actual loss or damage resulting from the breach.   *Ibid. citing Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917.   "The existence of duty is a question of law to be determined by the court alone.   This is because legal duties are…merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done.   Duty is simply a shorthand expression for the sum total of policy considerations favoring a conclusion that the plaintiff is entitled to legal protect."   *Ibid. citing Munoz v. City of Union City, supra,* 120 Cal.App.4th at 1093-1094.   Assuming there was duty of care owed to the plaintiffs, Defendants met that duty of care by providing a reasonable accommodation to the plaintiffs. Rather than reiterating the arguments set forth regarding plaintiffs' IIED claim, for the same reasons, Defendants did not breach a duty of care to plaintiffs. In any event, as argued above, the Defendants have qualified immunity as to plaintiffs'' negligence claim.

## XIV. MCPD OFFICERS SERRATA AND GARCIA ARE ENTITLED TO DISCRETIONARY IMMUNITY AS TO EACH CAUSE OF ACTION

Except as otherwise provided by statute, public employees are not liable for injuries resulting from their act or omission where the act or omission was the result

1    of the exercise of discretion vested in the employee, whether or not the discretion is

2    abused.   Gov. Code § 820.2.   The immunity conferred by § 820.2 is known as

3    "discretionary act" immunity and extends to governmental policy decisions entrusted

4    to official judgment. *Caldwell v. Montoya* (1995) 10 Cal.4[th] 972, 976.

5         Whether an employee has discretionary act immunity depends on whether the

6    act in question was discretionary or ministerial.   *McCorkle v. City of Los Angeles*

7    (1969) 70 Cal.2d 252, 260.   An act is ministerial (and thus not covered by the

8    immunity) where it amounts "only to an obedience to orders, or the performance of a

9    duty in which the [public employee] is left no choice of his own." *Ibid*. Internal cites

10   omitted.   An act is discretionary (and thus covered by the immunity) where the act

11   requires "personal deliberation, decision and judgment."   *Ibid*.   Where the alleged

12   injury is the result of the employee's exercise of discretion, the employee will be

13   immune from liability. *Ibid*.

14        In *Johnson v. State of California*, the Supreme Court discussed the

15   discretionary immunity codified in Government Code § 820.2. *Johnson v. State of*

16   *California* (1968) 69 Cal.2d 782, 782.   The Supreme Court noted that immunity

17   should shield those decisions which involve "basic policy" choices which should

18   "remain beyond the range of judicial inquiry" because they constitute an exercise of

19   governmental administration. *Id.* at 793.   The *Johnson* court explained: "Courts and

20   commentators have . . . centered their attention on an assurance of judicial abstention

21   in areas in which the responsibility for *basic policy decisions* has been committed to

22   coordinate branches of government. Any wider judicial review, we believe, would

23   place the court in the unseemly position of determining the propriety of decisions

24   expressly entrusted to a coordinate branch of government. Moreover, the potentiality

25   of such review might even in the first instance affect the coordinate body's decision-

26   making process." *Ibid*. Emphasis in original.

27        In *Sullivan v. City of Sacramento*, the court held that a 911 dispatcher's

28   decision to telephone a crime victim was discretionary and therefore cloaked with

1   immunity pursuant to Government Code § 820.2. *Sullivan v. City of Sacramento*
2   (1987) 190 Cal.App.3d 1070. In *Sullivan*, plaintiff's neighbors called 911 after
3   hearing plaintiff scream for help during a thirty-minute rape and burglary. *Id.* at
4   1073. The 911 dispatcher then called plaintiff and berated and badgered her for three
5   minutes while the rapist stood next to plaintiff armed with a hammer. *Ibid.* Plaintiff
6   alleged that the dispatcher's failure to notify the police and assist with the rapist's
7   capture caused her emotional distress separate and apart from the distress caused by
8   the rapist. *Ibid.*

9       The Court ruled that the dispatcher's decision to call the plaintiff was a
10  discretionary decision involving the dispatcher's "personal deliberation, decision and
11  judgment" and was therefore subject to the discretionary immunity conferred by
12  Government Code § 820.2. *Sullivan v. City of Sacramento, supra* 190 Cal.App.3d
13  1081. Since the employee was immune from liability, the governmental employers
14  were likewise immune from liability. *Id.* at 1080.

15      Assuming the plaintiffs' written discovery responses and deposition testimony
16  to be true, MCPD Officer Serrata's decision to separate Maritza from Bertha, as well
17  as Serrata's and Garcia's questioning tactics, i.e., threatening to have Maritza taken
18  into child protective services so that Bertha would tell the officers where the assault
19  rifle was located (UMF 9), was a discretionary decision involving "personal
20  deliberation, decision and judgment." *McCorkle v. City of Los Angeles, supra* 70
21  Cal.2d 260; *Sullivan v. City of Sacramento, supra* 190 Cal.App.3d 1081. The
22  decision was highly subjective and dependent on the precise situation at hand.
23  *Ronald S. v. County of San Diego, supra* 16 Cal.App.4th 897. There was no way that
24  Serrata and Garcia could have followed some form, rule or procedure for the precise
25  situation on August 26, 2008, given that on the one hand, the officers are trying to
26  locate an assault rifle by means of a search warrant and questioning, and on the other
27  hand, they encounter a not-so frequent situation of an autistic person being present at
28  the time of the execution of the search warrant. *Id.* Responding to on-the-spot

situations involves highly subjective and personal decisions on a minute-by-minute basis.  It would be an impossible task to draft rules or procedures to address every situation a police officer will face every minute of every day with respect to conducting search warrants and it would be impossible for officers to follow such rules or procedures to the "T" every time. There is no way that police work can be deemed merely a ministerial act, and as such, Serrata's and Garcia's alleged personal decisions to separate Maritza and use threats to coerce Bertha to tell them the location of the assault rifle is subject to the discretionary immunity provided in Gov't. Code § 820.2.  *Id.*  In fact, various MCPD policies require an officer to use his discretion when dealing with disabled persons, i.e., the hand cuffing policy, which gives the officer discretion as to whether a disabled person should be handcuffed. (UMFs 43 & 44)  Also, given the fact that this case deals with providing "reasonable accommodations" to disabled persons, the very definition requires an officer to use "discretion" in deciding what is "reasonable" under the circumstances. Thus, MCPD Officers Serrata and Garcia are entitled to discretionary immunity as to each of Cause of Action.

## XV.   THE CITY AND MCPD HAVE IMMUNITY FOR SERRATA'S AND GARCIA'S ACTS

A public entity employer is immune from vicarious liability for the acts or omissions of its employees where the employee is himself immune from liability. Gov. Code § 815.2(b).  As such, where a public employee has discretionary act immunity under Government Code § 820.2, the public entity employer also enjoys immunity. *Sava v. Fuller* (1967) 249 Cal.App.2d 281; *Elton v. Orange County* (1970) 3 Cal.App.3d 1053. In the present case, since MCPD Officers are immune from liability for their discretionary acts, so, too, are their employers, the City of Maywood and the MCPD. Gov. Code §§ 815.2 and 820.2.

## XVI.   PLAINTIFFS LACK EVIDENCE TO ESTABLISH AN ESSENTIAL ELEMENT OF THEIR CLAIM AGAINST THE CITY OF MAYWOOD AND THE MCPD UNDER *MONELL*

Local governments are "persons" subject to liability under section 1983 where official policy or custom causes a constitutional tort. *Monell v. Dep't of Soc. Serv.,* (1978) 436 U.S. 658, 690, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). The unconstitutional discretionary actions of municipal employees generally are not chargeable to the municipality under Section 1983. (citations) *City of St. Louis v. Praprotnik,* 485 U.S. 112, 126, 108 S. Ct. 915, 926 (1988). Municipal liability only attaches when the municipality itself causes the constitutional violation. *City of Canton v. Harris,* (1989) 489 U.S. 378, 109 S. Ct. 1197, 1203 (1989). In addition, "'the plaintiff must . . . demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'"  *Board of Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 137 L. Ed. 2d 626, 117 S. Ct. 1382 (1997).   Accordingly, a municipality is not liable for the random acts or isolated incidents of unconstitutional action by a non-policymaking employee.[1]

Rather, to impose municipal liability for a violation of constitutional rights, a plaintiff must show: (1) that plaintiff was deprived of a constitutional right; (2) that the municipality had a policy; (3) that this policy amounted to deliberate indifference of plaintiff's constitutional rights; and (4) that the policy was the moving force behind the constitutional violation. See *Plumeau v. Sch. Dist. # 40 County of Yamhill,* 130 F.3d 432, 438 (9th Cir. 1997).

---

[1] See *McDade v. West,* 223 F.3d 1135, 1142 (9th Cir. 2000); *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996); *Thompson v. City of Los Angeles,* 885 F.2d 1439, 1444 (9th Cir. 1989).

1    Liability may also be premised on "a widespread practice that, although not

2 authorized by written law or express municipal policy, is 'so permanent and well

3 settled as to constitute a "custom or usage" with the force of law.' [Citation.]" *City of*

4 *St. Louis v. Praprotnik,* (1988) 485 U.S. 112, 127 [108 S. Ct. 915, 99 L. Ed. 2d 107].)

5 "A 'policy' is '"a deliberate choice to follow a course of action . . . made from among

6 various alternatives by the official or officials responsible for establishing final policy

7 with respect to the subject matter in question."' [Citations.] A 'policy' can be one of

8 action or inaction [citations]." *Fairley v. Luman,* 281 F.3d 913, 918 (9th Cir. 2002).

9    As extensively argued throughout this motion, the defendant officers provided

10 plaintiffs with a reasonable accommodation. Consequently, none of the plaintiff's

11 constitutional rights as referenced in this motion were violated. Importantly, no

12 evidence exists of any custom, practice, or policy on the part of the City, MCPD, or

13 any of the defendant officers of violating any civil rights alleged by plaintiffs, or of

14 violating the rights of disabled people.

15    In fact, the evidence is to the contrary, given the testimony of Patricia Bravo,

16 City Clerk and PMK the City (UMF 35), who testified that she is responsible for

17 providing accommodations to disabled people who request them in order to attend

18 City Council meetings. (UMF 36.) Importantly, she also testified that the City

19 provides accommodations to disabled people, i.e., providing accommodations to a

20 disabled person who needs a special accommodation to attend a City Council

21 meeting or to take a test for employment with the City. (UMF 38.) She also testified

22 that the City's job postings encourage disabled people to apply for employment.

23 (UMF 39.) Also, Ms. Bravo was not familiar with any other lawsuits or complaints

24 against the City regarding the provision of accommodations or failure to provide

25 accommodations to disabled persons. (UMF 40.)

26    Additionally, Jimmy Rubio, Professional Standards Manager and PMK for the

27 MCPD (UMF 41), and MCPD Officers Serrata and Garcia  testified about certain

28 polices and procedures regarding accommodations to disabled persons, i.e., Policy

1  418 (Mental Illness Commitments), Policy 370 (Hearing Impaired/Disabled
2  Communications), Policy 404 (Briefing Training), Policy 354 (Handcuff Policy), and
3  Policy 322 (Search & Seizure). (UMF 43.) They also testified about training MCPD
4  officers have received regarding the A.D.A. and disabled people. (UMF 44.)
5  Importantly, other than the instant lawsuit, Mr. Rubio is not aware of any other
6  complaints the MCPD has received in the last two years regarding individuals with
7  disabilities. (UMF 45.)  Moreover, the plaintiffs have no evidence that MCPD
8  Officers Serrata and Garcia had a history of violating citizens' civil rights or
9  professional misconduct. (UMF 46.)  Because the Defendants did not violate the
10 plaintiffs' constitutional rights, and because the plaintiffs' cannot show a pattern,
11 practice, or custom of discrimination, *inter alia*, the City of Maywood and the MCPD
12 are not liable to plaintiffs under *Monell*.

13 **XVII. THE PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF;**
14 **ALSO, THE PLAINTIFF'S INJUNCTIVE RELIEF IS MOOT BECAUSE**
15 **THE MCPD WAS DISBANDED ON JULY 1, 2010**

16 Because plaintiffs have not shown that Defendants have a pattern, practice, or
17 custom of discriminating against disabled people, as argued above, plaintiffs are not
18 entitled to the injunctive relief they seek. Also, plaintiffs request for injunctive relief
19 is moot. The MCPD was disbanded as of midnight July 1, 2010, and cannot
20 implement any of the plaintiffs' requested policy changes. (*See* Request for Judicial
21 Notice.) Because the County of L.A. is a co-defendant and has been providing police
22 services through the L.A. Sheriffs Department officially as of midnight July 1, 2010,
23 these issues seemingly will have to be addressed by the County of L.A.

24 DATED: August 2, 2010        BOHM, MATSEN, KEGEL & AGUILERA, LLP

25                          By:    */s/ Jonyson A. Pierce*
26                                 Jonyson A. Pierce
                                    Attorneys for Defendants CITY OF MAYWOOD,
27                                 MAYWOOD-CUDAHY POLICE DEPARTMENT,
28                                 ANDREW SERRATA and FRANK GARCIA