1  PAUL B. BEACH, State Bar No. 166265
   pbeach@lbaclaw.com
2  DANIEL LEE, State Bar No. 236811
   pbeach@lbaclaw.com; dlee@lbaclaw.com
3  JUSTIN W. CLARK, State Bar No. 235477
   jclark@lbaclaw.com
4  LAWRENCE BEACH ALLEN & CHOI, PC
   100 West Broadway, Suite 1200
5  Glendale, California 91210-1219
   Telephone No. (818) 545-1925
6  Facsimile No. (818) 545-1937

7  Attorneys for Defendants
   County of Los Angeles and David Ishibashi

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12  MARITZA SANCHEZ MARTINEZ,           ) Case No. CV 09-06734 SJO (RCx)
    an individual, by and through her    )
13  mother and guardian ad litem,        ) Honorable S. James Otero
    BERTHA MARTINEZ, BERTHA              )
14  MARTINEZ, an individual, and         ) **DEFENDANTS' NOTICE OF**
    WENDY SANCHEZ, an individual,        ) **MOTION AND MOTION FOR**
15                                        ) **SUMMARY JUDGMENT OR, IN**
                                          ) **THE ALTERNATIVE, SUMMARY**
16         Plaintiffs,                    ) **ADJUDICATION;**
                                          ) **MEMORANDUM OF POINTS AND**
17     vs.                                ) **AUTHORITIES IN SUPPORT**
                                          ) **THEREOF**
18  CITY OF MAYWOOD, a public            )
    entity, MAYWOOD POLICE               ) *[Declarations and Exhibits, Separate*
19  DEPARTMENT, a public entity,         ) *Statement and [Proposed] Judgment*
    COUNTY OF LOS ANGELES, a             ) *filed concurrently herewith]*
20  public entity, ANDREW SERRATA,       )
    an individual, MPD OFFICER           ) Date:   August 30, 2010
21  GARCIA, an individual, DAVID         ) Time:  10:00 a.m.
    ISHIBASHI, an individual, and Does 1 ) Crtm:  1
22  through 10, individuals sued in their )
    individual capacities, inclusive,    ) Pretrial Conference:
23                                        ) Date:   October 12, 2010
           Defendants.                    ) Time:  9:00 a.m.
24                                        )
                                          ) Trial Date:
25  _____  ) Date:   October 19, 2010
                                          ) Time: 9:00 a.m.
26

27      TO THE HONORABLE COURT, ALL PARTIES, AND THEIR

28  ATTORNEYS OF RECORD:

                              1

PLEASE TAKE NOTICE that on August 30, 2010, at 10:00 a.m., in Courtroom 1 of the above-entitled Court, located at 312 N. Spring Street, Los Angeles, California 90012, Defendants County of Los Angeles and David Ishibashi ("Defendants") will move this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting summary judgment in their favor and against Plaintiffs Bertha Martinez ("Bertha"), Wendy Sanchez ("Wendy"), and Maritza Martinez ("Maritza") (collectively "Plaintiffs"). The grounds for Defendants' Motion are that there is no triable issue of material fact regarding Plaintiffs' purported causes of action against Defendants and that Defendants are therefore entitled to judgment as a matter of law.

PLEASE TAKE FURTHER NOTICE THAT, if for any reason summary judgment cannot be had, Defendants will, and hereby do, further move the Court for summary adjudication as to each of the following causes of action from the operative pleading in this matter, Plaintiffs' Complaint (Docket No. 4):

**A.     First Claim.**

Plaintiffs' First Claim is for violation of the Title II of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*. ("ADA"). Specifically, Plaintiffs allege that Defendants violated the ADA by "failing to provide her [Maritza] with appropriate accommodations and services in light of her disability." Plaintiffs Bertha and Wendy further allege that their rights were violated under the ADA based on their association with Maritza. This claim is only brought against the public entity Defendants.

**B.     Second Claim.**

Plaintiffs' Second Claim is for violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Plaintiffs' allege that Defendants have violated their rights under this section by "subjecting Plaintiff Maritza to discrimination in the benefits and services provided to the general public. This claim is only brought against the public entity Defendants.

MARTINEZ,M\MSJ

**C.    <u>Third Claim.</u>**

Plaintiffs' Third Claim is for violation of due process under the Fourteenth Amendment and is brought pursuant to both 42 U.S.C. § 1983 and, with respect to the public entity Defendants, under *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658 (1978).  This Claim is brought against all Defendants.

**D.    <u>Fourth Claim.</u>**

Plaintiffs' Fourth Claim is for violation of California Government Code § 11135.  In support of this Claim, Plaintiffs allege that Defendants have "unlawfully den[ied] Plaintiffs' Maritza, Bertha, and Wendy full and equal access to the benefits of, and unlawfully subjecting Plaintiffs to discrimination in, Defendants' programs and activities."  This claim is only brought against the public entity Defendants.

**E.    <u>Fifth Claim.</u>**

Plaintiffs' Fifth Claim is for violation of the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*  In support of this Claim, Plaintiffs allege that Defendants "unlawfully den[ied] Plaintiffs full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever, to which they are entitled…"  This claim is only brought against the public entity Defendants.

**F.    <u>Sixth Claim.</u>**

Plaintiffs' Sixth Claim is for violation of California Civil Code § 54. Plaintiffs allege that Defendants violated this section by "failing to provide reasonable and equal accommodations to Plaintiffs in light of, and based upon, Plaintiff Maritza's mental disability."  This claim is only brought against the public entity Defendants.

**G.    <u>Seventh Claim.</u>**

Plaintiffs' Seventh Claim is for intentional infliction of emotional distress. This Claim is brought against all Defendants.

**H.    <u>Eighth Claim.</u>**

MARTINEZ,M\MSJ

Plaintiffs' Eighth Claim is for Negligent Infliction of Emotional Distress. This Claim is brought against all Defendants.

**I.      Ninth Claim.**

Plaintiffs' Ninth Claim is for negligence.  This Claim is brought against all Defendants.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Declarations and Exhibits filed concurrently herewith, Defendants' Separate Statement of Uncontroverted Facts and Conclusions of Law, this Court's file, and upon such further evidence, both oral and documentary, as may be presented at or before the hearing on this Motion.

This Motion is made following counsel for Defendants' unsuccessful attempt to meet and confer pursuant to Local Rule 7-3 on July 27, 2010.  (*See,* Declaration of Daniel Lee ["Lee Decl."], ¶ 2.)

Dated:  August 2, 2010            LAWRENCE BEACH ALLEN & CHOI, PC


By _____/s/ Daniel Lee_____
         Daniel Lee
Attorneys for Defendants
County of Los Angeles and
David Ishibashi

4

MARTINEZ,M\MSJ

1

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES..........................................1

I.      Introduction .................................................................................................1

II.     Statement of Facts. ......................................................................................1

III.    Summary Judgment Standard.......................................................................4

IV.     County Defendants Join In The City Of Maywood Defendants' Motion  For Summary Judgment. ...................................................................5

V.      Even Assuming The Validity Of Plaintiffs' Allegations, There Is No Genuine Issue Of Material Fact That That The Subject Search Was Conducted By Or On Behalf Of The Bureau Or The County Of Los Angeles. ...........................................................................................................5

VI.     Summary Judgment Should Be Granted On Plaintiffs' ADA Claim For Several Reasons. ...................................................................................6

        A.      Even Based On Plaintiffs Allegations And Testimony, Plaintiffs   Were Not Intentionally Discriminated Against On The Basis Of   Plaintiff Maritza's Disability. ...................................7

        B.      In The Context Of Executing A Search Warrant, There Is No Obligation To Provide Accommodations Under The ADA Because The Execution Of A Search Warrant Is Not A Program   Or Service.........................................................................8

        C.      Isolated Incidents Of Discrimination Do Not Give Rise To An Actionable ADA Claim.......................................................10

        D.      Even Ignoring The Legal Defects Of Plaintiffs' Claims, The Facts  Are That Plaintiff Maritza Was Never Separated From Plaintiff Bertha Or Wendy. ................................................11

VII.    Summary Judgment Should Also Be Granted As To Plaintiffs' Section  504 Claim For The Same Reasons The ADA Claim Fails. ..........11

VIII.   Summary Judgment Should Be Granted On Plaintiffs' Section 1983 Claim Against Defendants Because There Is No  Genuine Issue Of Material Fact As To Whether The Bureau Has A Policy, Practice, Or Custom Of Failing To Provide Reasonable Accommodations During The Execution Of Search Warrants..........................................................12

        B.      Ishibashi. .............................................................................15

IX.      Ishibashi Is Entitled To Qualified Immunity. ............................................17

X.      Summary Judgment Should Be Granted As To Plaintiffs' State Law Claims.......................................................................................................18

i

A.    Plaintiffs' Fifth Claim Under The Unruh Civil Rights Act (Civil Code § 51) Fails Because It Does Not Apply To Public Entities Such As The County Of Los Angeles. ..............................18

B.    Defendants Are Entitled To Summary Judgment On Plaintiffs' Fourth Claim (California Government Code § 11135) And Sixth Claim (Civil Code § 54.1). ....................................19

C.    Defendants Are Entitled To Summary Judgment Against Plaintiffs' Eighth Claim For Negligent Infliction of Emotional Distress Because There Is No Such Cognizable Tort In California......................................................................................19

D.    Defendants Are Entitled To Summary Judgment On All Of Plaintiffs' State Law Claims Based On Government Code §§ 815 And 820.2........................................................................19

XII.    Conclusion...............................................................................20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

MARTINEZ,M\MSJ

**TABLE OF AUTHORITIES**

**Cases**                                                                                                  **Page**

Adickes v. S.H. Kress & Co.,
  398 U.S. 144, 90 S.Ct. 1598 (1970) ...............................................................13

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242, 106 S.Ct. 2505 (1986) ...............................................................5

Armstrong v. Wilson,
  124 F.3d 1019 (9th Cir. 1997)...........................................................................11

Bird v. Lewis & Clark College,
  303 F.3d 1015 (9th Cir. 2002)...........................................................................10

Board of the County Commissioners of Bryan County v. Brown,
  520 U.S. 397, 117 S.Ct. 1382 (1997) ...............................................................13

Celotex Corp. v. Catrett,
  477 U.S. 317, 106 S.Ct. 2548 (1986) ...............................................................4

Chesterfield Dev. Corp. v. City of Chesterfield,
  963 F.2d 1102 (8th Cir.1992)............................................................................16

City of Canton v. Harris,
  489 U.S. 378, 109 S.Ct. 1197 (1989) ...............................................................15

City of Oklahoma City v. Tuttle,
  471 U.S. 808, 105 S.Ct. 2427 (1985) ...............................................12, 13, 14

Cochran v. Herzog Engraving Co.,
  155 Cal.App.3d 405 (1984)................................................................................19

Daniels v. Williams,
  474 U.S. 327, 106 S.Ct. 662 (1986) .................................................................13

Duvall v. County of Kitsap,
  260 F.3d 1124 (9th Cir. 2001)....................................................................7, 10

Ess v. Eskaton Properties, Inc., 97 Cal. App. 4th 120 (2002) ...............................19

Ferguson v. City of Phoenix,
  157 F.3d 668 (9th Cir. 1998)..............................................................................7

Ganley v. Minneapolis Park & Recreation Bd.,
  491 F.3d 743 (8th Cir.2007)..............................................................................16

Hankins v. El Torito Restaurants, Inc.
  63 Cal.App.4th 510 (Cal.App. 1 Dist.,1998)...................................................19

Hunter v. Bryant
  502 U.S. 224, 112 S.Ct. 534 (1991) .................................................................17

i

Jackson v. Gates,
    975 F.2d 648 (9th Cir. 1992) ................................................................13

Lake Nacimiento Ranch Co. v. San Luis Obispo County,
    841 F.2d 872 (9th Cir. 1987) ..............................................................13

Lopez v. Southern Cal. Rapid Transit Dist.,
    40 Cal. 3d 780 (1985) ..........................................................................20

Malley v. Briggs
    475 U.S. 335, 106 S.Ct. 1092 (1986) .................................................17

Mark H. v. Lemahieu,
    513 F.3d 922 (9th Cir. 2008) ................................................................8

Mills v. City of Grand Forks,
    ___ F.3d ___, 2010 WL 2899152, 2 (C.A.8 (N.D. (C.A.8
    (N.D.),2010). .......................................................................................16

Monell v. Department of Social Services of the City of New York,
    436 U.S. 658, 98 S.Ct. 2018 (1978) ....................................12, 13, 14

Monell v. New York City Dept. of Soc. Serv.,
    436 U.S. 658 (1978) ............................................................................ iii

Myers v. Scott County,
    868 F.2d 1017 (8th Cir.1989) .............................................................16

Patrice v. Murphy,
    43 F. Supp. 2d 1156 (W.D. Wash. 1999) ............................................9

Polk County v. Dodson,
    454 U.S. 312, 102 S.Ct. 445 (1981) ..................................................13

Potter v. Firestone Tire & Rubber Co.,
    6 Cal. 4th 965 (1993) ..........................................................................19

Ramsey v. City of Lake Elsinore,
    220 Cal.App.3d 1530 (1990) ..............................................................19

Romero v. Kipsap County,
    931 F.2d 624 (9th Cir. 1991) ..............................................................17

Rosen v. Montgomery County of Maryland,
    121 F.3d 154 (4th Cir. 1997) ................................................................9

Saucier v. Katz,
    533 U.S. 194, 121 S.Ct. 2151 (2001) .................................................17

Sherrell ex rel. Wooden v. City of Long View,
    683 F.Supp. 1108 (E.D. TX 1987) .....................................................13

Sims v. Mulcahy,
    902 F.2d 524 (7th Cir. 1999) ..............................................................14

ii

Skokos v. Rhoades,
    440 F.3d 957 (8th Cir.2006) ........................................................................16

Spanish Speaking Citizens' Foundation v. Low,
    85 Cal.App.4th 1179 (2000) ........................................................................18

Suarez v. Superior Court of California,
    283 Fed.Appx. 470 (9th Cir. 2008) ............................................................10

Taormina v. California Dept. of Corrections
    946 F.Supp. 829 (1996) ..............................................................................18

Thompson v. City of Los Angeles,
    885 F.2d 1439 (9th Cir. 1989) ....................................................................14

Thompson v. Davis,
    295 F.3d 890 (9th Cir. 2002) ........................................................................9

Thompson v. Davis,
    295 F.3d 890 (9th Cir.2002) ..........................................................................6

Trevino v. Gates,
    99 F.3d 911 (9th Cir. 1996) ........................................................................14

Weinreich v. L.A. County Metro. Transp. Auth.,
    114 F.3d 976 (9th Cir.1997) ..........................................................................6

Weinreich v. Los Angeles County Metro. Transp. Auth.,
    114 F.3d 976 (9th Cir. 1997) ........................................................................9

Wilson v. Broward County, Fla.,
    2008 WL 708180 (S.D. Fla. 2008) ..............................................................10

Zukle v. The Regents of the University of California,
    166 F.3d 1041 (9th Cir. 1999) ....................................................................12

**Statutes**

§§ 815 and 820.2 ..............................................................................................20

29 U.S.C. § 794. ................................................................................................ ii

42 U.S.C. § 12132 ..............................................................................................6

Cal. Civ. Code § 51(b) ....................................................................................18

California Civil Code § 51 ................................................................................ iii

California Civil Code § 54 ................................................................................ iii

California Government Code § 11135 .............................................................. iii

California Government Code § 11135) ..............................................................19

California Government Code § 815 ..................................................................20

iii

Government Code §815 ................................................................................................20

Government Code §820.2 .............................................................................................20

**Rules**

42 U.S.C.A. § 12132 ....................................................................................................8

Federal Rules of Civil Procedure, Rule 56(c) ...........................................................4

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      Introduction.

Plaintiffs Bertha Martinez ("Bertha"), Wendy Sanchez ("Wendy"), and Maritza Martinez ("Maritza") (collectively "Plaintiffs") allege that their rights under the Americans with Disabilities Act and other state and federal laws were violated during the execution of a search warrant at Plaintiffs' residence in the City of Maywood on August 26, 2008.  Specifically, Plaintiffs' allege that during the search, officers separated Maritza (who is disabled) from Bertha and Wendy and refused to allow either Bertha or Wendy to attend to Maritza.  As set forth below, Defendants are entitled to summary judgment on all of Plaintiffs' claims.

### II.     Statement of Facts.

Maritza is a 22-year-old disabled women suffering from severe autism and mental retardation.  (*See*, Defendants' Statement of Unconverted Facts and Conclusions of Law ["SS"], 1.)  Bertha is Martiza's mother.  (SS 2.)  Wendy is Maritza's sister.  (SS 3.)  At all times relevant to this action, all three Plaintiffs resided at 3589 E. 54th Street in Maywood, California ("Plaintiffs' residence").  (SS 4.)

On August 14, 2008, Senior Investigator David Ishibashi ("Ishihashi"), working as part of the U.S. Marshall's Fugitive Task Force ("Task Force"), obtained information from a confidential informant that Guadencio Sanchez-Lopez (Bertha's husband and father of Maritza) was illegally residing at Plaintiffs' residence and that he was in possession of an assault rifle and handguns.[1]  (SS 5.)  The Task Force is made up of a team of law enforcement officers from a variety of agencies such as the Drug Enforcement Agency, the United States Marshall's Office, and other agencies.  (SS 7.)  The mission of the

---

[1] Guandencio Sanchez-Lopez was deported from the United States to Mexico on May 12, 2006 and has previously been convicted of crimes involving weapons . (SS 6.)

1

Task Force is, in part, to apprehend violent felons and investigate felonies involving illegal firearms and narcotics.  (SS 8.)  In carrying out its mission, the Task Force has nation-wide jurisdiction.  (SS 8.)  On August 19, 2008, Ishibashi confirmed that Mr. Sanchez-Lopez had a no-bail warrant for unlawful entry after deportation under arrest warrant number A77-187-518.  (SS 9.)

On August 22, 2008, Ishibashi and other members of the Task Force served search warrant No. 5534 at Plaintiffs' residence to arrest Mr. Sanchez-Lopez and to search the residence for illegal firearms.  (SS 10.)   Because Plaintiffs' residence is in the City of Maywood, prior to executing the warrant, Ishibashi contacted Maywood Police Department Officer Andrew Serrata regarding Plaintiffs' residence.  (SS 11.)  Officer Serrata is a certified expert on gangs in the City of Maywood.  (SS 12.)  Officer Serrata confirmed that Plaintiffs' residence was a known gang hang-out for members of the Maywood Locos street gang.  (SS 13.)

All three Plaintiffs and Mr. Sanchez –Lopez were present at Plaintiffs' residence when the August 22, 2008 search warrant was executed.  (SS 14.)  Mr. Sanchez-Lopez was arrested and a semi-automatic firearm was recovered.  (SS 15.)  Maywood Locos gang graffiti, paraphernalia, and ammunition were also recovered.  (SS  16.)  The search was completed without incident.  (SS 17.)  Plaintiffs do not allege any wrongdoing associated with the search on August 22, 2008.  (SS 19.)

Between August 22, 2008 and August 26, 2008, Ishibashi obtained further information from a confidential informant that an assault rifle was still hidden at Plaintiffs' residence and that it had been missed during the August 22, 2008 search.  (SS 20.)  Ishibashi obtained a second search warrant and on August 26, 2008.  (SS 21.)   Ishibashi and other members of the Task Force served the second search warrant at Plaintiffs' residence on August 26, 2008.  (SS 22.)  Maywood Police Officer Serrata was also present.  (SS 23.)  When the officers

2

arrived, Plaintiffs Bertha and Maritza were present at the house and Ishibashi and Serrata contacted them in the driveway. (SS 24.) Ishibashi identified himself as a police officer with a search warrant. (SS 25.) Both Plaintiffs were cooperative and the search began without incident after Plaintiffs and Joaquen Olvera were escorted to the front porch of Plaintiffs' residence. (SS 26.)

At about 12:28 p.m. Task Force Officer ("TFO") Reyes, Officer Serrata and Ishibashi began interviewing Plaintiff Bertha outside the garage. (SS 27.) Bertha is a Spanish speaker and TFO Reyes provided Spanish translation. (SS 28.) While the officers initially spoke with Plaintiff Bertha, Plaintiff Maritza was always nearby. (SS 29.) When Ishibashi and other Task Force officers interviewed her a short time later, Maritza remained on the front porch with her cousin. (SS 29.) Plaintiffs; however, claim that during the course of the search, Plaintiff Maritza was separated from Plaintiff Bertha and Plaintiff Wendy for approximately two hours and that Plaintiff Maritza became extremely upset because of the separation. (SS 30.)

As stated above, Plaintiff Wendy was not present when the search of Plaintiffs' residence began, but she arrived approximately two hours after the search began. (SS 31.) Plaintiff Wendy alleges that when she arrived, Plaintiff Maritza was in the front of the house and was extremely upset. (SS 32.) Plaintiff Wendy left Plaintiffs' residence to meet with the former Mayor of the City of Maywood, Felipe Aguirre. (SS 33.) Plaintiff Wendy met with Mr. Aguirre at a community center (in which his office was located) approximately 5 minutes from Plaintiffs' residence. (SS 34.) Plaintiff Wendy did not tell Mr. Aguirre anything regarding Plaintiff Maritza during the conversation at the Community Center. (SS 35.)

Plaintiff Wendy and Mr. Aguirre then drove back to Plaintiffs' residence. (SS 36.) When they arrived, Plaintiff Bertha and Plaintiff Maritza were seated on the front porch of the house and Task Force officers were "milling around"

Plaintiffs' residence.  (SS 37.)  When Mr. Aguirre arrived, Plaintiff Bertha came down from the porch to speak with him and Maritza stayed on the porch on her own.  (SS 38.)  None of the officers executing the search, including Ishibashi and Serrata, interfered with Plaintiff Bertha talking with Mr. Aguirre or prevented her from sitting with Maritza on the porch.  (SS 39.)  After the conclusion of their conversation, during which Bertha did not say anything about Maritza being upset, Bertha returned to the porch and sat next to Maritza.  (SS 40.)  When Mr. Aguirre observed Maritza and Bertha, Maritza did not seem upset nor was she crying or shaking.  (SS 41.)  Mr. Aguirre did not observe any discrimination by the officers executing the search warrant nor did he see and police misconduct.  (SS 42.)

Despite Plaintiffs' claims to the contrary, Plaintiff Maritza was never intentionally separated from either Plaintiff Bertha or Plaintiff Wendy nor did either Bertha or Wendy ever make a request to be able to attend to Maritza for any reason.  (SS 43.)  Had such a request been made, it easily could have and would have been accommodated; however, because Maritza was never separated from her mother or sister, there was no need for any accommodation.  (SS 44.)  The search was completed about 2:00 p.m.  (SS 45.)  Additional gang paraphernalia (a cell phone with "MWLS" on the back which stands for Maywood Locos), ammunition, and gun cleaning equipment were recovered.  (SS 46.)

Plaintiffs' Complaint was filed on September 22, 2009.  (SS 49.)

## III.  <u>Summary Judgment Standard.</u>

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The moving party discharges its initial burden by showing "that there is an absence of evidence to support the nonmoving party's case."  *See*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

4

MARTINEZ,M\MSJ

Thereafter, the burden shifts to the nonmoving party to designate specific facts showing there is a genuine issue for trial on those claims for which the opposing party will bear the burden of proof at trial. *Id.* at 324. This means the nonmoving party must provide facts that provide sufficient evidence "for a jury to return a verdict for that party." *See*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. However, "[t]he mere existence of a scintilla of evidence in support of a plaintiff's position will be insufficient." *Id.* at 252. Therefore, summary judgment is appropriate if evidence of a material fact is "merely colorable, or is not significantly probative." *Id.*, at 249-250 (citation omitted).

## IV.  County Defendants Join In The City Of Maywood Defendants' Motion For Summary Judgment.

County Defendants hereby join in the City of Maywood, Officer Garcia, and Officer Serrata's Motion for Summary Judgment filed on August 2, 2010.

## V.  Even Assuming The Validity Of Plaintiffs' Allegations, There Is No Genuine Issue Of Material Fact That The Subject Search Was Conducted By Or On Behalf Of The Bureau Or The County Of Los Angeles.

Summary judgment should be granted for the County of Los Angeles for the simple reason that none of the conduct about which Plaintiffs complain was undertaken by or under the direction of any County of Los Angeles department or agency. The subject search warrant and the search itself were conducted by the Task Force. (SS 5.) The Task Force is not a County law enforcement agency nor is it supervised or controlled by any of the County Defendants. The only tenuous connection the County of Los Angeles has to the operation of the Task Force is that Ishibashi is employed by District Attorney's Office Bureau of Investigations, however, as set forth in the Declaration of Lt. Pat Mcpherson and Ishibashi's

5

declaration, <u>the Bureau is only involved in administrative supervision of Ishibashi because of his assignment to the Task Force</u>.  (SS 5.)  In other words, other than mere fact that Ishibashi is paid by the County of Los Angeles, the County of Los Angeles did not execute or motivate the execution of the subject search warrant. The execution of the search warrant was wholly an operation of the Task Force under the direction of the U.S. Marshall.

## VI.   Summary Judgment Should Be Granted On Plaintiffs' ADA Claim For Several Reasons.

While the conduct at issue was under the direct supervision of the U.S. Marshall's Office, even ignoring that fact, the County of Los Angeles is entitled to summary judgment on Plaintiffs' First Claim under the ADA.  The sole basis for Plaintiffs' ADA claim is the alleged separation of Plaintiff Maritza from Plaintiffs Bertha and Wendy during the August 26, 2008 search.  (SS 30.)

As set forth in greater detail below, first, Plaintiffs were not discriminated against on the basis of disability.  Second, even assuming Plaintiffs had requested an accommodation, there was no obligation to provide one in the context of executing a search warrant because the execution of a search warrant is not a program or service under the ADA.  Third, overwhelming evidence establishes that Plaintiff Maritza was never actually separated from the other Plaintiffs as they allege.

Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability.  42 U.S.C. § 12132 (1994); *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir. 2002); *Weinreich v. L.A. County Metro. Transp. Auth.,* 114 F.3d 976, 978 (9th Cir. 1997).  To state a claim of disability discrimination under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in

6

or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Weinreich,* 114 F.3d at 978.  In order to prevail, Plaintiff must prove that the subject discrimination was solely by reason of disability.  *Id.*

     **A.**    <u>**Even Based On Plaintiffs Allegations And Testimony, Plaintiffs Were Not Intentionally Discriminated Against On The Basis Of Plaintiff Maritza's Disability.**</u>

The basis for Plaintiffs ADA claim is that during the August 26, 2010 search, while Task Force officers questioned Plaintiff Bertha, she was separated from Plaintiff Maritza.  (SS 30.)  Plaintiffs further claim that officers refused to allow Plaintiff Wendy to attend to Plaintiff Maritza.  (SS 43.)  Even assuming the truth of Plaintiffs' testimony and allegations, these facts are insufficient to state a claim under the ADA because reasons outside of Plaintiff Maritza's disability existed for separating her from Bertha during the search.  Essentially, even according to Plaintiffs, Maritza was not separated from Bertha because she is disabled.  Instead, according to Plaintiffs, Maritza was separated from Bertha and Wendy so that Task Force officers could interview Plaintiff Bertha regarding the location of the assault rifle and any other weapons secreted in Plaintiffs' residence.  (SS 27, 30.)  To assert a valid ADA claim, the conduct at issue must be intentionally discriminatory and be solely based on disability.  Here, the unconverted evidence establishes that Plaintiff cannot satisfy this requirement of an ADA claim because no one intentionally separated Maritza from her family.

In *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001), the plaintiff, a hearing-impaired individual, alleged that the defendant county had not provided videotext display as a reasonable accommodation for his disability.  In order to recover monetary damages under Title II of the ADA or the Rehabilitation Act, the Ninth Circuit reiterated that "a plaintiff must prove **intentional**

MARTINEZ,M\MSJ

**discrimination** on the part of the defendant." *Id.* at 1138 (citing *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998) ("compensatory damages are not available under Title II or § 504 absent a showing of discriminatory intent") (emphasis added).

In *Duvall*, the Ninth Circuit held for the first time that the appropriate test for intentional discrimination is "deliberate indifference" which "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Duvall*, 260 F.3d at 1138. The Ninth Circuit explained further that "deliberate indifference does not occur where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course. Rather, in order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is **more than negligent, and involves an element of deliberateness**." *Id.* at 1139 (emphasis added); *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008) ("a public entity can be liable for damages under § 504 [of the RA] if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons.").

Here, the unconverted evidence establishes that at most, Plaintiff Maritza was separated from Plaintiffs Bertha and Wendy during the time when Task Force officers were interviewing Plaintiff Bertha. (SS 29, 30.) There is absolutely no evidence, admissible or otherwise, that any of the Defendants intentionally separated Plaintiff Maritza from Bertha and Wendy because she is disabled. For this reason, Defendants are entitled to summary judgment on Plaintiffs' ADA claim.

**B.    In The Context Of Executing A Search Warrant, There Is No Obligation To Provide Accommodations Under The ADA Because The Execution Of A Search Warrant Is Not A Program Or Service.**

8

To state a claim under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12132 ("ADA"), the plaintiff must show that he was denied participation in a "service, program, or activity." *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).  There is no controlling authority in the Ninth Circuit regarding whether the execution of a search warrant triggers the "service, program, or activity" requirement; however, courts in analogous situations (such as arrests) have held that such situations are not "programs and services" under the ADA.  *See*, *Thompson v. Davis*, 295 F.3d 890, 897 (9th Cir. 2002)

In *Patrice v. Murphy*, 43 F. Supp. 2d 1156 (W.D. Wash. 1999), the district court granted defendants' motion for summary judgment on plaintiff's ADA claim, finding that "an arrest is not the type of service, program, or activity from which a disabled person could be denied benefits," unless the individual is claiming that he was arrested because he is disabled.  *Patrice*, 43 F. Supp. 2d at 1160.

Similarly, the Fourth Circuit found in *Rosen v. Montgomery County of Maryland*, 121 F.3d 154 (4th Cir. 1997), that the arrest of a deaf man for drunk driving did not trigger ADA accommodations, when officers did not communicate with the man in writing and did not provide an interpreter or other accommodations while he was in custody.  *Id* at 155-56.  The court stated that an arrest is not a "program or activity" under the ADA.  *Id.* at 157.

Here, as a threshold matter, Plaintiffs fail to allege exactly what "service, program, or activity" they were excluded from based on Plaintiff Maritza's disability.  (Complaint, ¶¶ 62-77.)  Second, the execution of a search warrant is not a program or service under the ADA such that Defendants had any obligation whatsoever to provide an accommodation to Plaintiffs even if she had requested one.  Accordingly, summary judgment on Plaintiffs' ADA claim is warranted.

9

1

2

**C.**     <u>Isolated Incidents Of Discrimination Do Not Give Rise To An</u>

<u>Actionable ADA Claim.</u>

3      Courts have consistently rejected ADA claims based on alleged isolated

4 incidents of failures to accommodate one's disability. *Bird v. Lewis & Clark*

5 *College*, 303 F.3d 1015 (9th Cir. 2002). Here, at most, there is evidence of a

6 single incident in which officers failed to provide an accommodation.

7      In *Suarez v. Superior Court of California*, 283 Fed.Appx. 470 (9th Cir.

8 2008), a hearing-impaired arrestee brought an ADA and Rehabilitation Act action

9 against a California trial court arising out of his request for an American Sign

10 Language Interpreter. *Id.* at 471. After the plaintiff's attorney made the request

11 for an interpreter, the trial court continued his case until the next morning and

12 ordered an interpreter to appear. *Id.* The interpreter appeared the next two

13 mornings, but the plaintiff was unable to attend, and when the plaintiff eventually

14 appeared in court, there was no interpreter present. *Id.* The Ninth Circuit found

15 that there was no evidence that the defendant trial court deliberately failed to

16 order an interpreter to appear on the day the plaintiff was in court. *Id.* Following

17 the analysis in *Duvall v. County of Kitsap*, 260 F.3d 1124, the Ninth Circuit held

18 that ordering an interpreter to appear the following day does not amount to

19 deliberate indifference, and such "bureaucratic slippage" or negligence does

20 not constitute an ADA violation. *Id.*

21      The Ninth Circuit is hardly alone in requiring ADA litigants to prove more

22 than isolated failures to accommodate. In *Wilson v. Broward County, Fla.*, 2008

23 WL 708180 (S.D. Fla. 2008), the plaintiff brought an action under Title II of the

24 ADA and the Rehabilitation Act based on the alleged failure of a County bus

25 driver to properly secure the plaintiff's wheelchair to the floor of a County bus.

26 *Id.* at *1. After a jury verdict in favor of the plaintiff, the lower court granted the

27 County's motion for judgment as a matter of law, holding that plaintiffs had not

28 presented a legally sufficient evidentiary basis for a reasonable jury to find that

10

the County failed to train its drivers adequately, or that any failure to train was the result of deliberate indifference.  *Id.*

The District Court then considered the plaintiff's request for a permanent injunction that would require the County to "immediately cease discriminating against Plaintiff solely on the basis of his disability by way of the wrongful policies and procedures" and remove all violations of the ADA and the Rehabilitation Act.  *Id.*  In denying the plaintiff's request for injunctive relief, the Court held that the finding that the bus driver failed to assist the plaintiff in securing his wheelchair on the one day in question was "**insufficient to demonstrate that Defendant violated either the ADA or the Rehabilitation Act.**"  *Id.* at *2 (emphasis added).  At most, Plaintiffs can come forward with evidence of single incident in which an accommodation was not provided.  This is insufficient to state an ADA claim.

> ### D.   Even Ignoring The Legal Defects Of Plaintiffs' Claims, The Facts Are That Plaintiff Maritza Was Never Separated From Plaintiff Bertha Or Wendy.

Plaintiffs' ADA claims fails as a matter of law based on Plaintiffs' allegations and their testimony; however, the fact of the matter is that Plaintiff Maritza was never separated from Bertha or Wendy and overwhelming evidence establishes this fact conclusively.  In fact, the only evidence of any kind whatsoever that Maritza was separated from her mother is Plaintiff Bertha and Plaintiff Wendy's self-serving testimony.  (SS 30.)  Two independent witnesses and all Defendants testified under oath that Plaintiff Maritza was never separated from Bertha or Wendy during the search on August 26, 2008.  (SS 43.)

### VII.   Summary Judgment Should Also Be Granted As To Plaintiffs' Section 504 Claim For The Same Reasons The ADA Claim Fails.

Because Plaintiffs cannot prevail on their ADA claim, as explained above, their claim under the Section 504 of Rehabilitation Act of 1973 necessarily fails

11

MARTINEZ,M\MSJ

also.  *See, Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997) (Congress has directed that the ADA and Rehabilitation Act be construed consistently); *Zukle v. The Regents of the University of California*, 166 F.3d 1041, 1045, n. 11 (9th Cir. 1999) ("There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act.").

Moreover, because Plaintiff's ADA and Section 504 claims fail because Plaintiffs were not the victim of disability discrimination, Plaintiffs' state law claims cannot survive summary judgment either—since all of Plaintiffs' claims require a showing of actual discrimination.

## VIII.  <u>Summary Judgment Should Be Granted On Plaintiffs' Section 1983 Claim Against Defendants Because There Is No Genuine Issue Of Material Fact As To Whether The Bureau Has A Policy, Practice, Or Custom Of Failing To Provide Reasonable Accommodations During The Execution Of Search Warrants.</u>

### A.    <u>The County Of Los Angeles.</u>

Under § 1983, there is no respondeat superior liability.  *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690 (1978). Rather, it is only when an explicit or tacit wrongful government "policy or custom" **causes** government employees to inflict an injury, that a government entity may be liable under § 1983.  The rationale for this rule is that:

> Section 1983 only imposes liability for deprivations 'cause[d]' by a particular defendant and … it (is) hard to find such causation where liability is imposed (against a governmental entity) merely because of the employment relationship.

*City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985).

Thus, in order to recover against a public entity defendant under § 1983, Plaintiffs must not only prove a constitutional violation, but also: (1) identify a specific city policy, practice or custom; (2) establish that the policy, practice or

12

custom actually exists; and (3) establish a causal nexus between the constitutional violation and the city's policy, practice or custom. *Monell* at 694; *Daniels v. Williams*, 474 U.S. 327 (1986). It is not enough for § 1983 plaintiffs merely to identify conduct attributable to employees of the municipality. Section 1983 plaintiffs must also demonstrate that the subject municipality's policies, practices or customs were "the moving force" that caused the constitutional violation. *Board of the County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404, 117 (1997); *Polk County v. Dodson*, 454 U.S. 312, 326 (1981); *City of Oklahoma v. Tuttle*, 471 U.S. at 818; *Jackson v. Gates*, 975 F.2d 648, 654 (9th Cir. 1992).

Thus, Plaintiffs are required to specifically identify the policy and set forth evidence showing that such policy actually existed and was causally related to the alleged violation. *Lake Nacimiento Ranch Co. v. San Luis Obispo County*, 841 F.2d 872 (9th Cir. 1987); *Sherrell ex rel. Wooden v. City of Long View*, 683 F.Supp. 1108 (E.D. Tx 1987). In addition, a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate the plaintiff's constitutional rights must demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences. *Brown*, *supra*, 520 U.S. at 407. A showing of simply or even heightened negligence is insufficient. *Id*.

Moreover, to prove that the County of Los Angeles had a custom that caused Plaintiff's constitutional rights to be violated, Plaintiff must show that the practices are "persistent and widespread . . . permanent and well-settled [and] deeply imbedded." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970). Plaintiff may not rest a claim of municipal liability on general, unsupported or frivolous allegations of an unconstitutional practice or pattern. *Monell, supra; Tuttle, supra*.

Accordingly, consistent with the commonly understood meaning of custom,

13

proof of random acts or isolated events is insufficient to establish custom. *See*, *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443-44 (9th Cir. 1989).  Put another way, "[t]he custom must be so '**persistent and widespread'** that it constitutes a 'permanent and well settled city policy.'  Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citations omitted).  By its very definition, the term "custom" implies a habitual practice that occurs on a regular basis. *See Sims v. Mulcahy*, 902 F.2d 524, 642 (7th Cir. 1999); *Tuttle*, 471 U.S. at 823-24.

Here, there are no facts or evidence to support Plaintiff's contention that the County of Los Angeles, through the Bureau, caused the alleged constitutional violation by virtue of a policy, practice or custom.  As a threshold issue with respect to any liability of the County, as set forth herein, Plaintiffs cannot establish that their constitutional rights were violated.  With respect to Plaintiffs' *Monell* claim, first, the unconverted evidence establishes that the County of Los Angeles, through the Bureau, does not have a policy, practice, or custom of failing to provide reasonable accommodations to individuals with disabilities.  (SS 60.)  On the contrary, it is the policy, practice or custom of the County to provide such accommodations when they are requested.  (SS 55.)

Second, even assuming the County did have such a policy, at most, Plaintiffs have alleged that their own rights were violated.  To prove a "custom" for purposes of *Monell* municipal liability, however, a single incident will not suffice and the unconverted evidence establishes that the subject search is the only time anyone has claimed that the County has failed to provide a reasonable accommodation.  (SS 60.)  This can hardly be said to satisfy the "consistent and widespread" requirement to establish *Monell* liability.  Third, Plaintiffs' cannot demonstrate that the County's polices, practices or customs were the "the moving

14

force" behind Plaintiffs' alleged violations.  Simply put, Plaintiffs cannot establish causation because, even assuming Maritza was separated from her family, the unconverted evidence establishes that the events in question took place during execution of a search warrant and while law enforcement officers were questioning Bertha about the location of illegal firearms.  Thus, any alleged separation (even though it never happened), would have been the result of officers interviewing a witness while searching for dangerous weapons – not because of a policy of failing to provide reasonable accommodations.

Since Plaintiffs has not and cannot show that they there is any genuine issue of material fact as to a policy, practice, or custom of failing to provide reasonable accommodations to persons with disabilities, the County of Los Angeles is entitled to summary judgment on Plaintiffs' Third Claim.[2]

**B.    Ishibashi.**

Plaintiffs also bring their Third Claim against Ishibashi for alleged violations of Plaintiffs' "clearly established right to due process under the Fourteenth Amendment."  First, Plaintiffs Complaint fails to specify exactly what clearly established right under the Fourteenth Amendment was violated and

---

[2] Plaintiffs' Complaint does not provide specifics of the nature of Plaintiffs' *Monell* claims against the County; however, to extent such claims are based on a failure to train, the County is still entitled to summary judgment.  *See*, *City of Canton v. Harris*, 489 U.S. 378 (1989) ("inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact …. Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by our prior cases – can a city be liable for such a failure under § 1983." *Id*. at 388-389.  First, the unconverted evidence establishes that the County, through the Bureau, trains its personnel to provide reasonable accommodations to persons with disabilities upon request and subject to safety and security concerns.  (SS 57.)  Second, there absolutely no evidence, admissible or otherwise, that the alleged failure to provide an accommodation was "deliberate" or conscious.

MARTINEZ,M\MSJ

Plaintiffs' Third Claim against Ishibashi should be dismissed on this ground alone.  Assuming *arguendo* that Plaintiffs have sufficiently identified a right protected by the Fourteenth Amendment and assuming Plaintiffs have sufficiently stated a claim based thereon (which they have not), Plaintiffs claim against Ishibashi still fails based on the controverted facts associated with the search on August 26.

The Due Process Clause of the Fourteenth Amendment ensures that states do not deprive individuals of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1.  "Under the rubric of substantive due process, the Due Process Clause protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them."  *Ganley v. Minneapolis Park & Recreation Bd.,* 491 F.3d 743, 749 (8th Cir. 2007) (internal quotations and citations omitted); *see also*, *Mills v. City of Grand Forks*, ___ F.3d ___, 2010 WL 2899152, 2 (9th Cir. 2010).

A valid substantive due process claim requires that a plaintiff show (1) a right under the Fourteenth Amendment; and (2) the defendant deprived the plaintiff of that right. *Id.* "[T]he theory of substantive due process is properly reserved for truly egregious and extraordinary cases." *Chesterfield Dev. Corp. v. City of Chesterfield,* 963 F.2d 1102, 1105 (8th Cir. 1992) (quoting *Myers v. Scott County,* 868 F.2d 1017, 1019 (8th Cir. 1989)).  A plaintiff must establish "the government action complained of is truly irrational, that is something more than ... arbitrary, capricious, or in violation of state law." *Ganley,* 491 F.3d at 749 (citations omitted). "Truly irrational" conduct is "conscience shocking, in a constitutional sense." *Skokos v. Rhoades,* 440 F.3d 957, 962 (8th Cir. 2006) (citations omitted).

Here, even assuming the truth of Plaintiffs' allegations, Plaintiffs cannot satisfy the above standard because, even according to Plaintiffs, Maritza was separated from Bertha and Wendy while Ishibashi and other task force officers

16

1    interviewed Bertha.  (SS 47.)  Second and perhaps more importantly, other than

2    Plaintiffs self-serving testimony, the overwhelming evidence establishes that

3    Ishibashi never separated Maritza from Bertha or Wendy and never refused to

4    provide any accommodation.  (SS 43.)

5    **IX.    Ishibashi Is Entitled To Qualified Immunity.**

6        Qualified immunity is designed to shield from liability "all but the plainly

7    incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S.

8    335, 343 (1986).  A determination of qualified immunity is particularly

9    appropriate for summary judgment.  The Supreme Court "repeatedly has stressed

10   the importance of resolving immunity questions at the earliest possible stage in

11   litigation."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  "[T]he entitlement is an

12   immunity from suit rather than a mere defense to liability."  *Id.*  The plaintiff

13   bears the burden of showing that the right allegedly violated was clearly

14   established at the time of the alleged misconduct.  *Romero v. Kipsap County*, 931

15   F.2d 624, 627 (9th Cir. 1991).

16       With respect to Plaintiffs' § 1983 claim, since there is no genuine issue that

17   Ishibashi caused a violation of Plaintiffs' constitutional rights, then summary

18   judgment under the first prong of the qualified immunity analysis is appropriate.

19   *See*, *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

20       With respect to the second prong of the qualified immunity analysis, as set

21   forth above, there is no clearly established law that stands for the proposition that

22   law enforcement officers must provide a reasonable accommodation to disabled

23   persons during execution of a search warrant.  Indeed there is no controlling law

24   in the Ninth Circuit or any other circuit that stands for the proposition that the

25   execution of a search warrant is a program or service under the ADA.  Thus, there

26   is not clearly established law on this subject and even assuming Ishibashi

27   separated Maritza from Bertha for interview purposes, there is little doubt that a

28

17

MARTINEZ,M\MSJ

1  reasonable officer in Ishibashi's position could have believed his actions were
2  lawful.

## X.    Summary Judgment Should Be Granted As To Plaintiffs' State Law Claims.

All of Plaintiffs' state law claims require proof of discrimination on the basis of disability.  As set forth above, Plaintiffs cannot make this showing.

### A.    Plaintiffs' Fifth Claim Under The Unruh Civil Rights Act (Civil Code § 51) Fails Because It Does Not Apply To Public Entities Such As The County Of Los Angeles.

Civil Code § 51 provides, in pertinent part:

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all **business establishments** of every kind whatsoever.

Cal. Civ. Code § 51(b) (emphasis added).

The Unruh Civil Rights Act is a public accommodations statute that provides a cause of action for damages suffered by an individual denied rights by a "business establishment" only.  In simple terms, Defendants are not "business establishments" and Plaintiff cannot cite any legal or factual authority equating Defendants with a "business establishment," because no such authority exists.

Indeed, the established authority is to the contrary.  *See, Spanish Speaking Citizens' Foundation v. Low*, 85 Cal. App. 4th 1179, 1240 (2000) ("Since the Department [of Insurance] is not a 'business establishment within the meaning of the Unruh Civil Rights Act [citation omitted], that law has no bearing on any regulation the Commissioner may adopt"); *Taormina v. California Dept. of Corrections* 946 F.Supp. 829, 833-34 (1996) (holding that a state prison is not a

18

"business establishment" under the Unruh Civil Rights Act).

Here, because Defendants are not, as a matter of law, "business establishments" within the meaning of the Unruh Civil Rights Act, Defendants are entitled to summary judgment on Plaintiffs' Fifth Claim.

**B.** **Defendants Are Entitled To Summary Judgment On Plaintiffs' Fourth Claim (California Government Code § 11135) And Sixth Claim (Civil Code § 54.1).**

As set forth above, Defendants are entitled to summary judgment on Plaintiffs' ADA claim and for this reason, Defendants are also entitled to summary judgment on Plaintiffs' Fourth and Sixth Claims.  *See*, *Hankins v. El Torito Restaurants*, Inc.  63 Cal. App .4th 510, 523 (Cal. App. 1 Dist. 1998) ("violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) also constitutes a violation of this section [54.1]....").

**C.** **Defendants Are Entitled To Summary Judgment Against Plaintiffs' Eighth Claim For Negligent Infliction of Emotional Distress Because There Is No Such Cognizable Tort In California.**

Plaintiffs cannot maintain an independent cause of action for "negligent infliction of emotional distress" ("NIED").  The California Supreme Court in *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993), held that a claim for NIED is not a separate claim for relief.  *See*, *Ess v. Eskaton Properties, Inc.*, 97 Cal. App. 4th 120, 126 (2002)

**D.** **Defendants Are Entitled To Summary Judgment On All Of Plaintiffs' State Law Claims Based On Government Code §§ 815 And 820.2.**

Governmental liability in California exists only upon an authorizing statute or enactment.  *Ramsey v. City of Lake Elsinore*, 220 Cal.App.3d 1530, 1536 (1990) ("Public liability for personal injuries is defined and limited by

MARTINEZ,M\MSJ

statute."); *Cochran v. Herzog Engraving Co.*, 155 Cal. App. 3d 405, 409 (1984) ("In short, sovereign immunity is the rule in California; governmental liability is limited to exceptions specifically set forth by statute.").  "[B]ecause under the Torts Claims Act all governmental liability is based on statute, the general rule that statutory causes of action must be pleaded with particularity is applicable." *Lopez v. Southern Cal. Rapid Transit Dist.*, 40 Cal. 780, 795 (1985).

California Government Code § 815 provides: "Except as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  As such, the County of Los Angeles is not liable under a negligence theory of liability because there is no statutory provision permitting common law negligence liability.  Government Code §820.2 provides: a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  Based on this section, Ishibashi is entitled to summary judgment

Here, there simply is no statute authorizing governmental tort liability for negligence and Defendants are immune under §§ 815 and 820.2.

## XII.  **Conclusion.**

For the reasons above, Defendants' Motion for Summary Judgment should be granted in its entirety.

Dated:  August 2, 2010                    LAWRENCE BEACH ALLEN & CHOI, PC


By _____/s/ Daniel Lee_____
        Daniel Lee
        Attorneys for Defendants
        County of Los Angeles and
        David Ishibashi

20

MARTINEZ,M\MSJ